THE STATE OF MISSOURI TO USE OF SAMUEL N. HOLLIDAY *et al.*, Respondent, *v.* LOUIS A. BENOIST *et als.*, Appellants.

1. *Assignments—Mortgage—Deed of Trust.*—A conveyance of property to trustees to sell, to pay the debts of the grantor, without condition, is an assignment for the benefit of the creditors named and preferred.

2. *Frauds—Assignments.*—In general, a party may assign his property as he pleases; but where there are numerous creditors, he cannot use an assignment as a means of preserving his property from the lawful actions and demands of his creditors. An assignment made with intent to delay, hinder or defraud creditors, is fraudulent. Where such intent appears upon the face of the instrument, it will be declared void, as a matter of law. The essence of the fraud consists in the fact, that the deed is not made in good faith for the payment of honest debts, but for the advantage of the grantor, and for the purpose of postponing and defeating the just claims of creditors.

3. *Assignments—Preferences.*—An assignor may make preferences, by making a partial assignment for the benefit of particular creditors, but in so doing the assignment must be made for the genuine purpose of paying honest debts, and not for the use and benefit of the grantor, nor to hinder, delay and defraud other creditors.

*Error to St. Louis Court of Common Pleas.*

This was an action instituted by the plaintiffs on a bond given by Benoist to the sheriff of St. Louis county, upon the levy of an execution in favor of Benoist against the Pilot Knob Iron Company. Plaintiffs claimed the property as trustees and assignees. The execution creditor gave bond as required by the St. Louis act respecting sheriffs, &c. The action involves the validity of an assignment, or conveyance in trust, made by the Pilot Knob Iron Company in February, 1862. The powers given in the deed were as follows:

"In trust, however, for the following purposes, to-wit:—

The said parties of the second part shall enter into and take immediate possession of all the property, real, personal and mixed, herein conveyed, and shall proceed to dispose of the same at public or private sale, as to them may seem most advantageous, and on such terms and for such prices as they may deem proper after consulting with the principal holders of the notes and bonds described in the beginning of this deed, or with the said John S. McCune and James H. Lucas, and shall use their best endeavors to collect in, recover, receive and convert into money the notes, debts and judgments herein described as owing to the said party of the first part; and may institute, prosecute and defend all such suits, process at law or in equity, and execute, perform and transact all such deeds, writings, acquittances, acts, matters and things as shall be necessary or expedient to carry into effect the trusts, uses, interests and purposes herein declared and contained; and may, at discretion, compound any of the debts due or owing to said party of the first part, and herein transferred to said parties of the second part, and enter into and execute any bargain of composition, compromise or arrangement with any of said persons indebted to the said party of the first part, as before said, who shall be or become insolvent or unable to make punctual payment; and also may make any such agreement or arrangement as shall be deemed reasonable with any person possessing any of the said securities given by the said party of the first part to parties of the second part; but it is understood, agreed and provided, that the naming of any debt or debts in this deed required to be paid, shall not prevent the parties of the first or second part from calling in question or controversy the amount of same, or taking any course at law or in equity to have the same disallowed or adjusted; and if the said trustees shall determine to sell all or any of said property at public sale, they are hereby authorized to sell the same at any time at public vendue to the highest bidder, for cash, or part cash and part on time, as to said trustees may seem best, first giving twenty days' public notice of the time, terms and place

of said sale, and of the property to be sold, by advertisement in the St. Louis County Legal Record and Advertiser, or some other paper printed in the city of St. Louis, Missouri (the place of sale to be left to the discretion of the trustees); and upon such private or public sale shall execute and deliver deeds in fee simple of the property sold, if real property, and bills of sale, if personal property, to the purchaser or purchasers thereof, and receive the proceeds of such sale or sales, out of which they shall pay, first, the costs and expenses of executing this trust, including compensation to the trustees, and shall pay *pro rata* the bonds and coupons endorsed by John S. McCune and James H. Lucas, as described in the beginning of this deed, and the notes, as described in the beginning of this deed as made or endorsed by John S. McCune and James H. Lucas, and all other notes described in this deed; and also the amount due Mrs. Jane F. Clapp, as also stated in the beginning of this deed; and they may repeat said process of public sale as often as may be necessary. And the said trustees are hereby authorized to hire a good and competent clerk or clerks, and as many men as may be necessary, to gather together, watch and protect and dispose of said property, at reasonable wages. And the said parties of the second part covenant faithfully to perform and fulfil the trust herein created.

"In witness whereof," &c.

The petition sets forth the deed as plaintiff's title, and the answer puts its validity in issue, and states that said deed is fraudulent and void, and a contrivance to hinder, delay and defraud the creditors of the company. The answer further averred, that since the execution of said deed all of the debts due by said company, in said deed expressed, have been fully paid and satisfied.

The plaintiff, on the trial, read in evidence the deed of trust or assignment. The defendants insisted that the deed was void on its face; this objection was overruled, and defendants duly excepted.

The parol evidence tended to prove that the company was

largely in debt at the time of the conveyance; that defendants, Benoist & Co., were creditors; that the debts of the company were fast maturing; that the assignee or trustee, Yore, was clerk of Lucas, and Holliday a relative of McCune; that McCune and Lucas were heavy stockholders and directors; that after the assignment the office of the company continued at its former place, McCune's office; that McCune continued to direct sales of property; Holliday and Yore never assumed control, but directed the clerk to receive instructions from McCune, which he did; and so McCune carried on the business, he being president of the company; property was sold at McCune's direction, debts paid by his direction, money drawn on his checks, no checks drawn by Holliday or Yore; and in September, 1863, Holliday and Yore made a deed back to the company, in a re-organized condition. The debts secured were nearly all paid, except ninety thousand dollars not due.

The evidence tended further to prove that Benoist was a creditor of the company; suit brought and judgment obtained, and execution issued.

Defendants also read in evidence the proceedings of board of directors of the Pilot Knob Iron Company, May 13, 1861—present Lucas and McCune—tending to show that the deeds were made for the security and benefit of McCune and Lucas, and also for the purpose of keeping the property temporarily out of the market.

It did not appear that any of the holders of the bonds were ever consulted, or ever knew anything about the assignment, or ever claimed under it. Further, that Holliday and Yore never assumed actual possession, but permitted the president of the company (McCune) to continue its business until they (Holliday and Yore) again released the property.

All the instructions asked by the defendants were refused. The only question submitted to the jury was, whether the debts mentioned in the deed were genuine. All questions of fraud were taken away from the consideration of the jury.

*Krum & Decker*, for appellants.

I. The deed of conveyance was, in law, void on its face.

II. The court erred in refusing to allow the jury to inquire into the actual intent with which the deed was made, and whether the beneficiaries were parties to a fraudulent intent.

1. The court erred in admitting the deed of trust or assignment under which the plaintiff claims; this conveyance is absolutely void on its face.

Every transfer of property must be in accordance with the established rules of law; where a party attempts to evade the law, the law will foil his attempt. In this State, the statute of assignments (R. C. 1855) declares the policy of the State in regard to assignments, and provides positively the mode in which assigned effects shall be administered for the benefit of creditors.

Contracts of assignment made in violation of this statute will be held void—Emerick v. Harlan, 1 Beasly, N. J. 230; 4 Sandf., S. C. 252; 7 Gill. 446; 21 Conn. 604.

The case at bar presents an assignment, in which the attempt to coerce the creditors is more apparent than in 6 Mo. The assignment before the court is a bold attempt to evade the masculine provisions of the statute law.

The deed under consideration conflicts with all the material provisions of this statute, and is an attempt to make an assignment, and place the assignee beyond the control of the court, by vesting him with certain special trusts personal in their nature, and which cannot be transferred to another, or exercised by another.

They could not make any preferences among the creditors within the assignment, but they attempt to evade this by putting it within the power of the assignee to dispute the creditor's claim, to compromise, compound, and settle with him; thus indirectly giving a preference among creditors, which directly they are prohibited from doing—Leading case, Grover v. Wakeman, 11 Wend. 187; Murphy v. Bell, 8 How. Pr. 468; Woodburn v. Musher, 9 Barb. 255; Hudson v. Bell, 3 Scam., Ills. 578.

An assignment, to be valid, must be free from all provisions tending to hinder or delay creditors—Burr. Assign. 236.

The power given to the assignee to compound, and compromise, and settle with the creditors, is of itself fatal ; but this deed goes further. It will be observed that it is declared, that "the naming of any debt in this deed, required to be paid, shall not prevent the assignor or assignee from calling in question or controversy the amount of the same, or taking any course at law or equity to have the same disallowed ;" then there is the power to retain the property from sale for an indefinite period, at the discretion of the trustee ; and then the power to compromise and settle with the creditors, given to the trustee. If a stronger case of intent to hinder, delay or defraud creditors has ever appeared, it is unknown to us. But in the case at bar, we have an assignment designed to create preferences among creditors, so that they could not be detected ; containing a provision which can only be of benefit to the assignor, by extorting from the creditor a release, which, if it existed in terms, would avoid the whole assignment ; it converts the debtor into a dispenser of alms to his own creditors, and puts up his favor and bounty, and the favor of the trustee, at auction, under cover of a trust, to be bestowed on the highest bidder.

It is the contract of the creditor, if he takes under it, as well as the contract of the debtor ; and if he accepts it at all, he takes it subject to all its conditions and restrictions. —Burrows v. Alter, 7 Mo. 424 ; Martin v. Maddox, 24 Mo. 575. There is no difference in principle between assignments direct to preferred creditors, or to trustees for their use— McClurge v. Lackey, 3 Pa. 83 ; Passmore v. Ellbridge, 12 Serg. & R. 198.

2. By our statute (copied from 27 Eliz.), every conveyance made with intent to hinder, delay or defraud creditors, is void—Martin v. Maddox, 24 Mo. 575 ; Wise v. Wimer, 23 Mo. 238 ; Brooks v. Wimer, 20 Mo. 503 ; Walter v. Wimer, 24 Mo. 63 ; Stanley v. Bunce, 27 Mo. 269 ; Lee v. Watson, 8 Mo. 323 ; Gates v. Labeaume, 19 Mo. 17.

If the plaintiffs recover at all, it will be directly for the benefit of the insolvent company ; by their deed, the company will receive this amount — Burr. Assign. ch. 17, pp. 249, 259, & ch. 19, pp. 405, 413, et seq.

*Casselberry*, for appellants.

The above deed of trust was recorded in Iron county, February 19, 1862 ; and in St. Louis county, February 24, 1862.

The plaintiffs offered the above deed of trust in evidence, to the reading of which the defendants objected, on the ground, among other things, that the deed is void ; but the court overruled the objection ; to which overruling the defendants at the time excepted, and the deed was read in evidence notwithstanding the objections.

I. The deed of trust is void because it authorizes the trustees to sell on credit. An assignment by insolvent debtors of their property to trustees for the benefit of their creditors, authorizing the trustees to sell the assigned property upon credit, is fraudulent and void, as against the creditors of the assignors, on account of the delay—2 Seld. 510 ; 24 Ills. 257 ; 11 Md. 173 ; 2 Duer, 533 ; 21 N. Y. 168 ; 17 N. Y. 21 ; 6 Seld. 691 ; 12 Wis. 362 ; 7 Paige, 37 ; 9 Paige, 405 ; 2 Comst. 365 ; 12 Barb. 168.

II. The deed of trust is void because it authorizes the trustees to compromise, arrange and compound with the creditors. The giving of the assignees power to compound with all or any of the creditors, makes the assignment illegal—4 Paige, 41 ; 11 Wend. 187, 203, 208.

III. The deed of trust is void because it requires the trustees to consult John S. McCune, the president, before acting. The reservation by the assignor of any power over the property assigned makes the assignment void—2 Vern. 510.

IV. The deed of trust is void because it shows on its own face that it must necessarily have the effect of delaying the creditors of the assignor. Where an assignment of itself shows that it must necessarily have the effect of defrauding the creditors of the assignors, it is conclusive evidence of a

fraudulent intent, and the assignment will be held void—1 Edw. Ch. R. 256 ; 3 Paige, 557 ; 11 Wend. 240 ; 5 Paige, 13, 22 ; 23 Wend. 653 ; 9 Johns. 337 ; 11 Wheat. 59 ; 6 Hill, 438 ; 2 Barb. 9; 4 Barb. 546.

V. We contend that the deed of trust is void because the conveyance was made by the president of the company for his own benefit, and for the benefit of James H. Lucas, a director. It takes two to make a contract. No man can convey to himself. In fact, both McCune and Lucas were directors and large stockholders at the time of the execution of the deed of trust. A conveyance of land by the corporation to two of its directors is void as against creditors of the corporation—Cleveland v. Lacrosse R.R., 7 Am. Law Reg. 536, and authorities cited.

VI. The deed of trust is void because it was used as a device to continue the business of the assignors uninterrupted by their creditors. The resolutions passed by the Pilot Knob Iron Company, February 4, 1862, say that "Mr. McCune, the president of the company, made a report of the condition of the company's affairs, showing the assets and liabilities, and character of both ; and recommended to the board, as the true policy of the company, in view of its large liabilities, and the present low price of pig iron, that any large sale of pig iron be postponed for some months, as the indications were favorable to a rise in the price of the article."

An assignment cannot be used as a device to continue the business of the assignor, uninterrupted by his creditors—5 Add. & Ell. 28 ; 7 Md. 380 ; 7 How. (U. S.) 276 ; 7 Serg. & R. 219 ; 9 Sm. & M. 394; 6 Rob. 246 ; Zeigler v. Maddox, 26 Mo. 575.

The substance of the oral testimony is, that the motive of making the deed of trust was to keep the iron out of the market until it would bring a better price, and in the mean time to carry on the iron works for the benefit of the company. Some of the witnesses explain this conduct by saying that it was to keep the property from being sacrificed, by keeping

the property out of the market until it would bring enough to pay all the debts.

The proceedings and resolutions of the board of directors, and the testimony of all the witnesses, when taken together, show that the whole transaction was to make the creditors wait until the iron would bring a better price, and to enable the company in an indirect way, through "go-betweens," to carry on their business in defiance of their creditors. All of which was a fraud in law on the creditors, and made the deed of trust void.

If the deed of trust in the case at bar had been a general assignment of all the property of the Pilot Knob Iron Company, it would have been void, because the trustee did not comply with the law concerning assignments, in giving bond and security, and in doing all things required by the law. To apply, therefore, the decisions concerning fraudulent conveyances to the deed of trust at bar, it is void, for the reasons herein fully explained; and to apply to it the law concerning assignments, it is void, because the law has not been complied with: so it is void, under any and all circumstances.

HOLMES, Judge, delivered the opinion of the court.

There was some discussion as to whether the instrument in question here was to be considered as a deed of trust in the nature of a mortgage security for a debt, or a partial assignment for the benefit of creditors. It does not purport to be a security for a debt, with power to sell if the debt be not paid when due. It conveys the property absolutely to trustees, to be sold for the payment of the debts named and preferred in it. It is clearly a partial assignment for the benefit of creditors, and not a mortgage security. Such instruments have always been treated as assignments—Gale v. Mensing, 20 Mo. 461.

The decision of the case depends upon the validity of the assignment as against an attaching creditor. The evidence

in the case, and the instructions asked for on either side, were such as to raise the general questions of fraud in law on the face of the instrument, and of fraud in fact for the determination of the jury.

In general, every man has a right to convey and dispose of his own property in any way he pleases; but where the relation of debtor and creditor exists, especially if there be numerous cerditors, and the affairs of the party be in an embarrassed condition, an assignment for the benefit of the creditors, partial or general, of the greater part or of the whole of the debtor's property, cannot be made the means of covering up and preserving it for his own use, or of withdrawing and protecting it from the lawful actions, remedies, and demands of his creditors.

The statute, since the 13 Eliz., ch. 5, called the statute of frauds, utterly prohibits any such fraudulent conveyance. It declares that every assignment that is made and contrived with intent to hinder, delay or defraud creditors of their lawful actions, damages, forfeitures, debts or demands, shall be deemed and taken, as against creditors, to be clearly and utterly void—R. C. 1855, p. 802, § 2.

Where such fraudulent intent is shown by the very terms, provisions and trusts of the instrument itself, it will be declared void, as a matter of law. But the fraud must be apparent. It is not enough that it may tend, in some measure, to hinder or delay creditors. Such must be the necessary effect of every assignment, to a greater or less extent. It must occasion such hindrance or delay as manifestly to work a fraud upon the rights of creditors, or make the assignment operate not merely for the interests of the beneficiaries in it, but also for the open or secret use and benefit of the grantor himself. An intent to defraud, as well as to hinder and delay, must appear in order to make it void— Gates v. Labeaume, 19 Mo. 17. The very essence of the fraud consists in its not being made *bona fide* for the payment of honest debts, but for the advantage of the grantor, upon secret and fraudulent trusts for his use, and for the

purpose of postponing or defeating the just claims of creditors.

An assignment may be void in whole or in part as being in contravention of the statutes. In England, an assignment which conveys the whole or so large a part of the debtor's property as to render any further prosecution of his business impracticable, is held to be an act of bankruptcy and void, as made in contravention of the bankrupt act; and the property assigned will be thrown into a course of administration under that act. In this State we have no bankrupt law, nor any insolvent laws, properly so called; but we have an assignment act, and it has been uniformly held by this court, that every assignment of this nature comes within the purview of that act, and that the property assigned must be disposed of, and the trust executed, in pursuance of the provisions thereof—Manny v. Logan, 27 Mo. 528.

Provisions that are in conflict with that act will be held void for that very reason; but if otherwise valid, they will be carried into effect, in pursuance of the provisions of that act. It is quite apparent that this assignment was made without any reference to the assignment act; but that alone will not render it fraudulent and void, as against creditors. An assignment of this kind is considered as made upon a meritorious and valuable consideration as between the grantor and the beneficiaries in it, and it will be carried into effect so far as it can be done in accordance with law.

In all such cases, the question will still remain, whether the provisions and trusts of the assignment are of such a character as to show on their face an intent to defraud creditors. In this case, there is no express reservation of any interest, use or advantage in the property assigned by the grantor, not even of the surplus, if there should be any, nor of any direct control over it for his own benefit. There is no express intent to place the property beyond the reach of creditors for the purpose of covering it up and securing it for the use of the grantor, or so as to deprive his creditors of their lawful actions. If there be any such intent, it must result as

a presumption of law from the necessary operation and effect of the provisions contained in it. It provides, among other things, that the trustees shall take immediate possession, and proceed to dispose of the property " at public or private sale, as to them may seem most advantageous, and on such terms and for such prices as they may deem proper, after consulting with the principal holders of the notes and bonds" described in it; that they "may make any such agreement or arrangement as shall be deemed reasonable" with the creditors named; that they may call in question the amounts of the several debts, and, if necessary, have them adjusted in courts of law or equity; that they may sell at any time at public sale or vendue, for cash, or part cash and part on time, as to them shall seem best," on twenty days' notice; and that they shall apply the proceeds to the payment of the debts named and preferred equally *pro rata*.

Some of these provisions are in conflict with the assignment act, and therefore void so far; and some are not. The clause giving preferences *pro rata* is in conformity with that act. The power given to sell at public or private sale, and for cash, or for part cash and part on time, though evidently intended to be independent of the statute, is yet not materially in conflict with the provisions of that act in respect of sales by assignees, under the order of court, which may be public or private, and for cash in hand, or upon such reasonable credit and security as the court may direct. (§ 31.) In these respects, this assignment is not only not against the policy of the act, but the act itself may be taken as a legislative recognition of the propriety and justice of such a course of proceeding in such matters.

As to the question in general, whether the giving of a power to sell on credit will, of itself, make an assignment void as against creditors, there is much conflict in the authorities. In some States, and especially in New York, it has been decided that it will; in others, that it will not. The statutes and policy of different States may be somewhat different on this subject. It is certain, that the courts of this State have

hitherto shown a strong desire to uphold assignments for the benefit of creditors, where it could be done in conformity with principles of law; and in this respect no difference is made between partial and general assignments. Much depends on the nature of the particular case. Fraud is indeed the same thing in the largest as in the smallest transaction. But it is certainly proper to consider the nature of the transaction, the kind and description of property conveyed, and the propriety and fitness of the trusts, powers and things to be done in the given instance; and all the provisions may properly be considered together in determining whether, on the whole, they must necessarily have the effect to work such hindrance and delay as actually to defraud creditors. There is a vast difference between the assignment of a small store of goods, and a conveyance of an immense amount of property, consisting of real estate, iron-works, furnaces, and cumbersome and expensive machinery, enormous quantities of ores, coal, pig iron, and other heavy material or materials in the actual process of manufacture, for the payment of a few very large debts, and especially where the entire property is not conveyed, where the grantor is not shown to be in an utterly insolvent condition, and where property enough may still remain for the ultimate liquidation of all indebtedness. In such a case as this, we cannot say that these provisions and trusts were unreasonable with reference to the best interests of the creditors themselves, nor that they must necessarily operate for the use and benefit of the grantor, or unjustly hinder or delay and defraud the other creditors of their lawful actions. Such a conclusion would require a greater stretch of construction than the reason and justice and whole nature of the case will warrant. It does not appear that the property conveyed was more than was necessary for the discharge of the debts provided for. It cannot fairly be inferred that the object and intent were to lock up the property for the use of the grantor, or defeat and defraud creditors.

Particular objection is made to the provision about making such agreements and arrangements with the holders of

securities as might be reasonable. Where such authority goes so far as to give a power to compound with creditors in such a manner as to change the order of preferences, or to perpetuate in the assignees the right of giving preferences in future, or gives an arbitrary power to force creditors into terms different from those of the instrument itself, under penalty of being denied the full benefit of the assignment, it might very well be declared fraudulent, and void for that reason. Where there was a provision that the assignee might liquidate or compound by making over the choses in action, debts or accounts in payment of demands, the assignment was held not to be therefore void—Burr, Assign. 221. This would seem to have been a reasonable authority, and a power that might be exercised without express grant; and the clause in question here may receive a like interpretation, there being nothing to indicate that it was intended otherwise than for the interest and benefit of the creditors preferred, according to the discretion of the trustees. Nor can the deed be held void merely because members of the corporation are among the creditors provided for. But if it could be proved that under cover of such a provision, collusion, covin and fraud were actually designed, and attempted to be carried into effect, for the use of the grantor, to the prejudice of the rights of creditors, that would be a matter of fact for the jury, on the evidence.

It is insisted also that the whole scheme of an assignment was resorted to and contrived as a device for the purpose of enabling the corporation to cover up and protect its property, and to continue its business uninterrupted by its creditors, and especially to withdraw the property from sale until the markets should be more favorable. Upon evidence tending to prove that such was the case, it would be a question of fact for the jury. No such intent is necessarily to be gathered from the terms of the instrument alone. In Bodley v. Goodrich, 7 How, U. S. 276, some such purpose was expressed in the assignment.

It is not to be denied that there was some very important

evidence, extraneous to the instrument, having some tendency to show an actual intent to put the property beyond the reach of creditors in general, to lock it up in the hands of trustees who remained under the influence and control of the grantor, in order that by collusive arrangements they might be able to keep the property out of the market until there should be a rise of prices, or a better demand, and to prevent it being subjected to forced sale and sacrifice under execution ; that one object was to save and protect the property for the benefit of the grantor, or to gain time to enable the parties to make other arrangements for the satisfaction of creditors ; that the discretion and powers given to the trustees were purposely left open and vague in order that it might be in their power to compel the creditors to come into such arrangements as they should propose ; that the form of the instrument was made to be an assignment instead of a mortgage, as contemplated by the board of directors which authorized it to be executed, and for the purpose of enabling influential members of the corporation even to destroy the corporation itself and reorganize it under the same charter with a new company, and procure a transfer of the property to the new company discharged of the debts of the old company ; that it was not contemplated that the property should be administered and disposed of under the assignment act ; and that all this was further shown by the subsequent proceedings. Now, if it could be proved to the satisfaction of a jury that such was the object and intent of the grantor, the assignment should unquestionably be declared fraudulent and void as against creditors. If it were devised and contrived as a scheme for keeping the property under the secret control of the grantor, the corporation itself, or for keeping it out of the market for an indefinite period of time, or for putting it beyond the reach of legal process at the suit of creditors, or locking it up in any way for the grantor's own use and benefit ; if it were not designed in good faith for the payment of honest debts really owed, but the whole transaction were conceived in collusion, malice, covin and bad faith,

and tainted with secret fraud ; and if these facts were proved to the satisfaction of the jury, they ought to find it fraudulent and void as against an attaching creditor.

It would come clearly within the probibition of the statute of frauds ; nor would it require much evidence beyond the proof of these facts to implicate the assignees in the fraudulent intent, for such could hardly be the nature of the transaction without their knowing it, and lending themselves to the accomplishment of the fraud. As to honest creditors, the beneficiaries of the trust, the consideration might be meritorious and valuable, so far ; but even an assignment for a good and valuable consideration may be vitiated by a fraudulent purpose and intent. The statute declares that every assignment which is made for the purpose of defrauding creditors shall be utterly void. And where the instrument is not void on its face, but the property assigned is afterwards dealt with in a manner pursuant to a fraudulent scheme and purpose, in fact, contemporaneous with the execution of the assignment, very slight additional evidence should be required to prove that such dealing was the result and a part of some secret arrangement to that effect between the parties ; and such a proceeding should stamp the transaction with *mala fides* and constructive fraud as effectually as if it had been embodied in the express provisions of the instrument—Reed v. Pellesier, 28 Mo. 173.

The case of Pinneo v. Hart, (30 Mo. 569,) is distinguishable from a case of this kind. There the whole property of the debtor was assigned for the benefit of all his creditors, and some false and fictitious debts had been inserted in the schedule. It was considered that the lawful object could be carried into effect under the assignment act notwithstanding these fictitious debts, and that the property might be applied to the honest purpose of paying the debts of all the creditors. It was thought that in such case there was no one who could be actually defrauded, and it was held that the mere fact that a fictitious debt was inserted in the schedule was not enough to make the whole assignment void, and leave the

property to a general scramble. We do not take it as authority to the point, that an assignment proved to have been contrived and concocted in fraud of the lawful actions of creditors, or for the secret use and benefit of the grantor himself, would not render it utterly void as against creditors. The assignment act is made for honest and valid assignments, and not in any manner to uphold fraudulent assignments. It does not repeal nor modify or change the statute of frauds. Where such a fraudulent purpose on the part of the grantor is clearly proved to exist, it cannot be presumed that the creditors assent to the fraud, or in any manner become parties to a transaction which is tainted with fraud in its inception, or if they do, they should be held to be participators and parties to the fraud also. Such would seem to be the intent of the statute of frauds. The assignment act declares, that all preferences within the provisions of any assignment shall be void, and that all creditors named in it shall be paid *pro rata*. This applies to all assignments whether partial or general. In case of general assignments, it will operate as an absolute prohibition of any preferences whatever. But it is still in the power of the assignor to give preferences, by making a partial assignment only. Preferences are most generally the very object and purpose contemplated in making such assignments. But if parties will still undertake to give preferences in this way, they must take care to keep clear of the statute of frauds. They must be absolutely and fairly made for the genuine purpose of paying honest debts, and not for the use and benefit of the grantor, nor to hinder or delay other creditors in the prosecution of their lawful actions and just rights, beyond what is necessary for the accomplishment of the legitimate object of paying just debts.

There was some evidence here tending to show such fraud in fact. The defendants had a right to have this question submitted to the jury, under proper instructions. We do not think this was fairly done by the instructions which were given by the court below. To the first and second instruc-

tions given for the plaintiff, there would seem to be no serious objection, except that the first one supposes a purpose of *securing* genuine debts, apparently treating the instrument as a mortgage security for a debt.   In this it was not entirely accurate ; but the main object of it seems to have been to declare that the assignment was not fraudulent and void on its face ; and in this respect we think it was correct enough.

The plaintiff's third instruction put the whole case to the jury on a narrower issue than was just and proper on the whole evidence.   It declared, in effect, that if the deed was made for the purpose of securing genuine debts, then the property conveyed was not liable to attachment.   Now that may have been one purpose, but not the only purpose.   That might be strictly true, and yet the assignment may have been fraudulently made.   There was evidence tending to prove fraud in fact, independent of the instrument.   The instruction excluded all this part of the case from the consideration of the jury.   It has been several times held by this court, that it is error to give an instruction for the plaintiff which wholly takes away from the jury the consideration of a material issue for the defence, when there is evidence tending to support it..   The jury must be allowed to pass upon all material facts and issues.

We need not undertake to review in detail the numerous instructions which were refused for the defendants.   It might require us to write a treatise on the whole law of assignments.   It can scarcely be necessary for skilful counsel to ask such a multiplicity of instructions, when the substantial issue of fact can be more clearly presented to the jury in a few definite legal propositions.   We think the defendants were entitled to have the question of fraudulent intent in fact submitted to the determination of the jury, in accordance with the principles above indicated ; and under this head, the fifth, sixth and eighth instructions might have been given.   Others were objectionable in singling out a part of the evidence, or a particular fact, and declaring that such particular facts constituted fraud, when they only tended

to prove fraud, of which the jury should have been left to judge as a matter of fact. It was not necessary that the trustees should actually sign the instrument, if they otherwise accepted the trust. Possession must be according to the nature of the property. An actual delivery of possession was not necessary to make the assignment valid, the assignment being delivered and recorded. The plaintiffs, if entitled to recover at all, were entitled to recover the whole amount of their damages.

. The judgment will be reversed and the cause remanded. Judge Wagner concurring; Judge Lovelace absent.