Bigelow et als. v. Stringer et als.

---

JOHN W. BIGELOW *et als.*, Respondents, *v.* THOMAS STRINGER *et als*, Appellants.

*Fraudulent Conveyances—Use of Grantors—Creditors—Practice.*—Where it is apparent upon the face of the deed of assignment or mortgage made by insolvent debtors that the deed was made for the purpose of hindering, delaying or defrauding creditors, it is the duty of the court to instruct the jury that the deed is void, and the question of the intent of the grantors should not in such case be left to the determination of the jury. And when upon the face of the deed of assignment it appeared that the parties supposed that there would be a large surplus after paying the debts described, and the whole property was protected from all forced sales or attachments and levies for the period of two years, during which period the management of the business was to be under the supervision of the grantors—*held*, that upon its face the deed appeared to be made for the purpose of hindering, delaying and defrauding creditors, and was void.

*Appeal from St. Louis Court of Common Pleas.*

This was an action of trespass *de bonis asportatis* brought by the plaintiffs, consisting of several mercantile firms of the city of St. Louis, against the defendants, also consisting of a number of firms in the same city. The plaintiffs alleged that on or before April 2, 1861, they were the owners of a cer-

tain lot of goods in a certain store in the town of Tipton, Moniteau county, State of Missouri, and that the defendants on the said 2d of April took them from the possession of the plaintiffs; that on or before the 10th of April, 1861, they were the owners and possessors of a certain lot of goods in the town of Sedalia, county of Pettis and State of Missouri, and that the defendants on the said 10th of April took them from the plaintiffs.

The defendants traversed the allegation of the plaintiffs as to the ownership and possession of the property, and justified the taking of the property in question by virtue of executions obtained against the firm of Williams & Crooks, and the sheriff's levy by virtue thereof.

The plaintiffs then read in evidence the assignment of the goods in question from Williams & Crooks to plaintiffs; this assignment was dated March 20, 1861, and the said Williams & Crooks after reciting that they are indebted to the plaintiffs in various sums, therein enumerated, and that they are desirous of securing to the plaintiffs the debts due them, proceed to declare that

" The parties of the first part do by these presents bargain, sell, convey, deliver and set over unto the parties of the second part their entire stock of goods, wares and merchandise now owned and possessed by them in the towns of Tipton and Sedalia aforesaid, a schedule whereof is hereto annexed, marked 'A.', " &c. [The rest is given in the opinion.]

The following instructions were given for the plaintiffs:

1. It is lawful for a debtor in failing circumstances to pay one debt, or secure the same, and leave other debts unpaid and unsecured, notwithstanding such payment or security may embrace the whole of the property owned by the debtor.

2. If the jury find from the evidence that the writing read in evidence, purporting to be an assignment to the plaintiffs by Williams & Crooks, was executed by one of the parties composing said firm, and that after the execution of said assignment and before the executions read in evidence were

placed in the hands of the sheriffs respectively of Pettis and Moniteau counties, the other partner of said firm of Williams & Crooks ratified or approved the act of his copartner in executing said assignment; and if the jury also believe from the evidence that the plaintiffs at the time said assignment was made were creditors of the firm of Williams & Crooks, and that said assignment was made in good faith to secure such indebtedness, and that the plaintiffs took possession of the goods, wares and merchandise conveyed to them by said assignment, and continued in possession and control thereof up to the time said goods were seized under the executions read in evidence, then the jury should find for the plaintiffs.

3. The burden of proving that the assignment read in evidence by the plaintiffs was made with a fraudulent intent on the part of Williams & Crooks, or either of them, to hinder, delay or defraud their creditors, rests on the defendants; and unless such fraudulent intent has been made to appear from the evidence to the satisfaction of the jury, the jury will presume that it was made with an honest intent.

4. Before the jury can find the conveyance read in evidence void on the ground of fraud, they must not only find that the same was made with a fraudulent design on the part of Williams & Crooks, or either of them, but also that such fraudulent design was participated in by the persons to whom the goods were conveyed by said instrument or their agents, and unless the same has been established to their satisfaction by the evidence in the cause, they cannot find against the plaintiffs on the issue of fraud.

5. Although the jury may find from the evidence that subsequent to the making of the assignment read in evidence both W. W. Williams and W. P. Tooley made entries of transactions in the books of Williams & Crooks produced in evidence, yet the plaintiffs cannot be affected or prejudiced by said entries in said books, unless the jury find from the evidence that said entries have reference to the sale or disposal of the goods assigned by Williams & Crooks to the

plaintiffs, or that the plaintiffs authorized the transactions to which said entries relate.

6. The jury are instructed to disregard that part of the deposition read in evidence of H. Clay Ewing that refers to a conversation in the railroad cars between him and Berry, or Lonergan, about the assignees supplying new goods.

7. If the jury find for the plaintiffs, they should assess the damages at the amount now due on the notes described in the assignment and read in evidence by the plaintiffs, less the amount paid on said notes by W. P. Tooley after said assignment, if the amount due on said notes does not exceed the amount of the value of the property taken by the defendants and interest to the present time; but if the amount now due on said notes does not exceed the value of the property in dispute, then the jury should only assess the plaintiffs' damages at the value of the said property taken less the amount of said payment, with interest thereon at six per cent. per annum from the time of the institution of this suit until the present time.

The following instructions were given at the instance of the defendants:

1. The fact that there was a trial of the right of property before the sheriff's jury should not be considered by the jury in this case. The jury should wholly reject this fact from their consideration.

2. Executions are a lien upon the personal property of the debtor from the time they come into the hands of the sheriff of the county where the property is situated.

3. Unless the jury are satisfied by the evidence that Crooks assented to or ratified the execution of the instrument of writing read in evidence by the plaintiffs before the executions of defendants were delivered to the sheriff, the plaintiffs cannot recover in this case.

4. If the jury believe from the evidence that any witness in this case has knowingly sworn falsely to any material fact

in this case, they may discredit and reject the whole testimony of such witness.

5. To make the instrument purporting to be signed by Williams & Crooks, and read in evidence by the plaintiffs, valid as against the creditors of Williams & Crooks, there must have been an actual delivery of the property, and an actual and continued change of the possession of it; that is, Williams & Crooks must have delivered the property to the grantees in said instrument with the intention of giving them the right to the possession of it, and said grantees must have accepted the property with the intention of holding it under said instrument, and must have continued so to hold possession of it, by themselves or their agents, up to the time it was levied on by the sheriff.

The defendants also asked the following instructions, which were refused:

1. [This instruction is substantially the same as the third given for the defendants.]

2. Although the jury may believe that Williams & Crooks were indebted to the plaintiffs for the debts mentioned in the conveyance read in evidence, yet if they further believe from the evidence that at the time said conveyance was made Williams & Crooks were largely indebted to defendants and others, and that the purpose and intention of Williams & Crooks in making said conveyance was to hinder and delay their creditors, or any of them, for two years, from selling said goods for the payment of their debts, and that plaintiffs or their agents knew of such purpose and intention and assented thereto, and accepted such conveyance for such purpose, then said conveyance was fraudulent and void as against the creditors of Williams & Crooks existing at that time.

3. The court instructs the jury, that if they find from the evidence that at and before the execution of the instrument executed by Williams, read in evidence by plaintiffs, Williams & Crooks were in possession of the goods in con-

troversy, and had John P. Tooley and others in possession and charge thereof for them, and said Tooley and others who had so had charge and possession for Williams & Crooks afterwards remained and continued in such possession of the goods, and continued so to do until the execution in favor of defendants read in evidence were levied thereon, there was not a delivery of said property and an actual continued change of the possession thereof.

4. The court declares the law to be that the instrument in writing dated March 20, 1861, read in evidence by plaintiffs, was and is void as against the creditors of Williams & Crooks then existing.

5. The court declares that upon the evidence in the cause plaintiffs cannot recover.

6. By the instrument in writing purporting to be signed by Williams & Crooks the property therein described was conveyed to the plaintiffs to secure them the debts due them, said property was placed absolutely beyond the control of the other creditors of said Williams & Crooks, not named in said instrument, for two years at least; and the business of selling said property was to be carried on by said plaintiffs, the profits and losses of said business were to be on account of said Williams & Crooks, and the expenses of carrying on the said business were to be borne by said Williams & Crooks.

7. To constitute a valid delivery and change of the possession of property that shall be good against creditors, it is necessary that there should be such an open, apparent and visible change of possession as would be sufficient to show persons who had previous business transactions with the firm, that the firm had parted with their interest in the business. Unless there was such a delivery and change of possession in this case, the law presumes the sale to be fraudulent and void as to the creditors of Williams & Crooks.

8. The instrument in writing under which plaintiffs claim the property in question is a mortgage. No mortgage of personal property is valid against any other person than the par-

ties thereto, unless the mortgaged property be delivered to, and the possession thereof be retained by, the mortgagees, or unless the mortgage be recorded.

9. The instrument of writing signed, or purporting to be signed, by Williams & Crooks, and read in evidence by the plaintiffs, purports to convey to plaintiffs the entire stock of goods, wares and merchandise owned by Williams & Crooks at Tipton and Sedalia. By said instrument the plaintiffs were authorized to take immediate possession of said property, and to sell the same, as a prudent merchant would dispose of his own merchandise, at wholesale or retail ; the instrument further authorized the plaintiffs to employ agents, or to rent stores, and to pay for both agents and rents out of the proceeds of the sales of the goods so conveyed ; it required plaintiffs to keep accurate and just accounts of all sales and of all expenses, which accounts were at all times to be open to the inspection of Williams & Crooks. The said plaintiffs were not authorized until the lapse of two years to sell said property, or any portion thereof, at public sale.

10. To make the instrument purporting to be signed by Williams & Crooks, and read in evidence by the plaintiffs, valid as against the creditors of Williams & Crooks, there must have been an actual delivery of the property, and an actual and continued change of the property mentioned in the instrument. There is no evidence in the case of a valid delivery and continued change of the property in dispute.

11. The law presumes the sale of personal property unaccompanied by a delivery and continued change of possession of the property sold, to be fraudulent as to creditors.

12. The delivery and change of possession to be valid as against creditors must be so open and apparent that persons who have had previous dealings with the party selling may see, from the manner in which the business was transacted, that there has been a change of ownership. A mere formal delivery, such as going to a store where the property sold is situated, and there telling the purchaser that the goods in

the store are hereby delivered, and delivering the key of the store, is not a good and sufficient delivery.

*Sharp & Broadhead*, and *Knox & Smith*, for appellants.

The deed of assignment is void upon its face. The schedule attached to the deed shows that $14,499.98 worth of goods were conveyed to the grantees for the ostensible purpose of paying off $7,651.33 of indebtedness to them ; the petition in this case shows that the goods were worth $14,-499.98.

The instrument is not a mortgage or a deed of trust, but an assignment—an absolute transfer of property for the payment of specified debts. The assignees are allowed two years to sell the property, which at the time of the assignment is worth nearly double the amount of the debts to be paid out of it ; and even then it is discretionary with them whether they will sell the remainder of the goods or not. If the intention of such a conveyance was to put the property beyond the reach of creditors—to lock it up in the hands of trustees in order that it might be kept out of market until there should be a rise in prices or a better demand, and to prevent its being subjected to forced sale and sacrifice under execution— or to gain time to enable the parties to make other arrangements for the satisfaction of creditors—or of putting it beyond the reach of legal process at the suit of creditors— if any of these objects appear from the face of this instrument itself, or is the necessary effect of its operation, although it be coupled with a promise to pay an honest debt, it is nevertheless fraudulent and void under our statute—State to use, &c. v. Benoist, 37 Mo. 500, 514–17.

If the only purpose was to secure the genuine debts mentioned in the assignment, why convey property double in value to the amount of those debts ? or why postpone indefinitely the time when the grantees should be compelled to sell? Postponing to an unreasonable time the period of sale and payment will avoid the assignment—11 Wend. 187; 9

Sm. & M. 396; 21 Miss. 106; 8 Yerg. 134; Potter v. McDowell, 31 Mo. 62. So conveying property largely exceeding in value the amount of the debt is evidence of fraud—8 Barb. 124; 3 Sanf. 311; 31 Mo. 62.

The intent to hinder and delay may be inferred from the necessary operation of the instrument. Whilst the debtor has a right to prefer one creditor to another, every other creditor has a right to demand that he shall not by such preference be immeasurably delayed or hindered from subjecting all the debtor's property not necessary to meet that preference to the payment of his debts by due process of law; he has a right to the surplus, and to have that surplus made available—Reed v. Pelletier, 28 Mo. 177.

A deed which operates to hinder and delay creditors is fraudulent in law, independent of the motives of the grantor —44 Barb. 192; Potter v. McDowell, 31 Mo. 62.

It may be laid down as a rule under the statute of frauds, that every conveyance which by its terms is not reasonably necessary to secure the debt preferred, and which by such terms necessarily hinders, prevents or delays the lawful actions of other creditors, is a fraud upon the rights of such creditors; such is the doctrine held by this court in the case of State to use, &c. v. Benoist et al., 37 Mo. 500.—24 Miss. (2 Cush.) 106.

Williams was an incompetent witness to establish the validity of the instrument, or to give to it by his verbal statements an effect which it would not otherwise have—R. C. 1855, p. 1578.

*Krum, Decker & Krum,* and *Cline & Jamison,* for respondents.

The appellants claim that the court below erred in refusing to pronounce the deed made by Williams & Crooks to the plaintiffs, fraudulent and void on its face, as a matter of law, claiming that it appeared to have been made for the use of the grantors, within the meaning of the first section of

our statute concerning fraudulent conveyances, R. C. 1855, p. 822, § 1, which is as follows : "Every deed of gift and conveyance of goods and chattels in trust to the use of the grantor so making such deed of gift or conveyance, is declared to be void as against creditors, existing and subsequent, and purchasers."

The second section has reference to the intention of the parties, and has been unanimously held by our courts to be a question of fact to be left to the jury, as will appear by reference to the following cases : Shapleigh v. Baird, 26 Mo. 362 ; Johnson v. McAllister, 30 Mo. 331 ; Woods v. Zimmerman, 27 Mo. 107 ; Milburn v. Waugh, 11 Mo. 369 ; State to use, &c. v. Benoist, 37 Mo. 500 ; Gates v. Labeaume et al., 19 Mo. 17 ; Kuykendall v. McDonald, 29 Mo. 135.

The deed was not to the use of the grantor ; it was a mortgage to creditors in good faith, to secure their debts or claims, and the thing pledged under it was delivered to the grantees (creditors), with power of sale to realize money to satisfy their claims ; and if anything remained after this was done, it was to be handed over (whether money or goods) to the grantor or debtor. This, we claim, constitutes a valid deed under our statute of Personal Trusts.—See Whitingham v. Lafoy, 7 Cow. 737 ; 5 Cow. 547 ; Grover v. Wakeman, 11 Wend. 189.

FAGG, Judge, delivered the opinion of the court.

In the argument of this case several points have been discovered which we do not deem necessary to consider in this opinion, as the matter of chief importance is the construction of the instrument under which the respondents claim to be entitled to the property, for the taking of which by the appellants they instituted their suit in the court below. The determination of the case must at last turn upon the question as to whether or not this instrument upon its face shows that it is within the statute of this State concerning fraudulent conveyances. If it can be shown to be so, then it was

the duty of the court in which the cause was tried, as a matter of law, to have declared it fraudulent and void by giving the instruction to that effect which was asked by the defendants.

There was evidence, it is true, tending to show that the purpose of the grantors in making the conveyance was to get time, and to prevent a forced sale of the goods by other creditors, thereby causing them to be sacrificed; and we think the court erred in refusing to give an instruction hypothecated upon the evidence of Williams, one of the grantors. It was shown that these grantors (Williams & Crooks) were largely indebted to other parties besides those provided for in the deed. These parties were obtaining judgments against them, and Williams, who testified in behalf of plaintiffs, says substantially that one of the chief inducements to the execution of the deed was to prevent these judgment creditors from forcing their property to sale, and that the persons representing the respondents told him that he could prevent the sacrifice of the goods in that way, and he therefore executed the conveyance in order to get time. But passing this by, as well as the other points in reference to the competency of Williams to testify—the delivery of the goods to respondents—the assent of Crooks to the conveyance, which was executed by Williams alone after a refusal upon the part of the former to sign it—as well as other questions discussed, we come directly to consider the main question. It will not be necessary to review the former decisions in this court in the various cases which have arisen under this statute. It is perhaps safe to say, that, in every case to be found in our own reports, it has been held, that where it is apparent from the face of the deed itself that it is a conveyance to the use of the grantor, it is the duty of the court trying the cause, as a matter of law, to tell the jury that such conveyance is absolutely fraudulent and void as against creditors.—Robinson's exec'rs v. Robards, 15 Mo. 459; Gates v. Labeaume, 19 Mo. 17; Brooks v. Wimer, 20 Mo. 503; Wal-

ter v. Wimer, 24 Mo. 63 ; Stanley v. Bruce, 27 Mo. 269 ; Hall v. Webb, 28 Mo. 408; Johnson v. McAllister's assignees, 30 Mo. 327 ; Potter v. McDowell, 31 Mo. 62 ; and State to use, &c. v. Benoist et al., 37 Mo. 500.

In the case of Zeigler v. Maddox, 26 Mo. 575, Judge Scott, in delivering the opinion of the court, says: "When the deed is fair on its face, but is affected with a secret trust in favor of the grantor, as such secret trust can only be shown by extrinsic evidence, the existence of fraud is a matter of fact to be tried by a jury, who will determine whether a deed was made with an intent to hinder, delay or defraud creditors or purchasers, such case coming within the provisions of § 2 of the act concerning fraudulent conveyances. In a case arising under the first section of the act, it is not necessary that the deed in so many words should express that it was in trust to the use of the grantor ; but if such is the legal effect of it, as gathered from its language, the court will, as a matter of law, declare that it is void." If it is meant by this decision that the court would only be authorized, as a matter of law, to declare deeds void which come within the first section, and that in every case arising under the second section the question as to hindering, delaying and defrauding creditors is one of fact necessarily to be submitted to a jury, it is difficult to perceive upon what ground such a distinction rests. Under the first section, the question is whether or not it is a conveyance to the use of the grantor ; under the second, it is true the word "intent" is used, but it does not necessarily follow that this can only be ascertained by extrinsic evidence. It is as much the duty of the court to declare the legal force and effect of the deed in the one case as it is in the other ; and although it may not be expressed in terms, yet if a fair construction of its provisions will justify the conclusion that it will operate so as to hinder, delay or defraud creditors of their lawful actions and demands, it should be declared fraudulent and void as to creditors—State to use, &c. v. Benoist et al., 37 Mo. 500. Every man must be presumed to intend the necessary consequences of his act.

It is insisted on the part of the respondents that this conveyance was intended simply as a mortgage or security, and is not to be regarded as an absolute conveyance and transfer of the goods to be applied to the payment of the debts recited·in it.

It is true that the deed was not executed, and the assignees have not proceeded in accordance with the provisions of the act in relation to voluntary assignments ; but we think that the theory upon which this suit was prosecuted in the lower court, as well as the intention of the parties to the deed, warrant us in treating it as an absolute conveyance and delivery of the property for the purposes indicated.

Here was a stock of goods, stated in the schedule attached to the deed to be worth over $14,000, estimated at St. Louis wholesale prices, transferred for the payment of debts amounting in the aggregate to about $7,650. The deed after enumerating the debts to be paid, and describing the property conveyed, proceeds as follows :

"And the parties of the second part are by these presents authorized to take immediate possession of the same, and shall proceed as rapidly as possible to sell said goods, wares and merchandise, at wholesale or retail, as a prudent merchant would dispose of his own merchandise, and apply the proceeds, after the payment of necessary expenses, to the liquidation of the debts and interests aforesaid, distributing the proceeds among said debts and interests according to amount so as to make the payment on each debt and interest equal ; and if there should be a surplus of goods, wares and merchandise, or of the proceeds thereof, the parties of the second part shall deliver and pay over the same to the parties of the first part, their executors, administrators and assigns, and the parties of the second part covenant with the parties of the first part to keep accounts, and just accounts, of all sales of said goods, wares and merchandise, and of the necessary expenses, and at all times to allow the parties of the first part access to the accounts aforesaid, and to observe

in all things the provisions of this conveyance. If the proceeds of said goods, wares and merchandise should not amount to enough to liquidate said debts and interest, after the payment of necessary expenses, within two years from the date of these presents, the parties of the second part may proceed to sell the remnant of said goods, wares and merchandise at public auction to the highest bidder, for cash, upon thirty days' notice of the time and place, disposing of the proceeds as hereinbefore provided."

The parties to this deed at the time of its execution must have contemplated a large surplus in the hands of the assignees, if the business should be carried on honestly and diligently. It really seems to have been intended simply as a continuation of the business in the ordinary way for a period of two years. It was not to be conducted by the grantors, or in their name, but it was at all times to be open to their supervision and inspection.

The mere fact of a reservation of a surplus would not of itself make it a conveyance to the use of the grantor. Upon this point, the former decisions of this court have not followed the course of decisions of the New York courts—Richards et al. v. Levin, 16 Mo. 596 ; Johnson v. McAllister's assignees, 30 Mo. 327. It was held in these two cases that such a reservation was really nothing more than what the grantor would be entitled to by law. This would certainly be taken to be the true interpretation of a deed in a case where there was no doubt of the insufficiency of the property conveyed to pay the debts provided for, or that possibly there might be something more than the required amount. In either case, it could hardly be considered as good ground for attacking the *bona fides* of the transaction, because the surplus should be regarded as a mere contingency, and as something not certainly within the contemplation of the parties. Here the property was at least double in value the amount of the debts ; it was protected from forced sales by other creditors for a period of two years ; the business to be

conducted in such a manner as to realize as much as possible for the goods, and, to a certain extent, under the supervision of the grantors.

These were manifest advantages enuring directly to the benefit of the grantors. The property was safe from sacrifice for that period of time, and the surplus over and above the payment of expenses and the debts preferred was to be made as large as the nature of the case would admit of. There was no legal process by which the remaining creditors could have reached this surplus and made it available for the payment of their debts within the two years. These considerations would lead us very far towards the conclusion that the deed was in point of fact within the provisions of the first section of the act; and if the court below had so declared upon the trial, we should have felt much hesitation in reversing its judgment on that account. We think, however, that it comes most clearly within the second section, and should be held to be utterly void. This ruling is not believed to be contrary to the letter or spirit of any former determination of this question by this court, and is in strict accordance with the principles settled by the case of State to use, &c. v. Benoist et al., 37 Mo. 500.

The judgment of the court of Common Pleas must be reversed and the cause remanded. The other judges concur.

Motion for rehearing overruled.