# 436 SUPREME COURT OF MISSOURI,

DONOVAN v. DUNNING *et al.*, *Appellants*.

1. **Equity Pleading** : FRAUDULENT CONVEYANCE. When the plaintiff bases his claim to equitable relief against several defendants on one general right, the petition is not demurrable for multifariousness, although the defendants may have separate and distinct defenses.

   This principle applied to a case where plaintiff sought to have certain conveyances set aside as being in fraud of creditors.

2. **Fraud.** Upon examination of the evidence the court finds a deed in controversy in this case, to have been executed in fraud of creditors.

3. **Constructive Fraud** ; SECRET RESERVATION OF USE. The fact that the grantor in a deed, absolute on its face, by a secret contemporaneous instrument reserves to himself, for life, the use of the property conveyed, is evincive of legal, if not actual fraud.

*Appeal from Buchanan Circuit Court.*—HON. J. P. GRUBB, Judge.

*Silas Woodson and Doniphan & Reed* for appellants.

*Loan, Pike, Vories, Thomas & Tyler* for respondents.

NORTON, J.—This is a suit in equity, commenced in the circuit court of Buchanan county, for the purpose of setting aside certain conveyances on the ground of fraud. The petition alleges that defendant, William Dunning, was, in November, 1873, indebted to various persons, as follows: To one Riddle in the sum of $1,230 ; Toole $1,162 ; White $390 ; Wallingford $695 ; Beattie $1,139 ; Willis & Logan $56 ; the Buchanan Bank $574 and $201, and George W. Samuel $857 ; that said Dunning was insolvent, and, on the 12th day of November, 1873, executed and delivered to his daughter, Annie Stephens, a deed to the northwest quarter of the northeast quarter of section 28, township 56, range 36, and that this deed was made without any consideration; that, on the 11th day of March, 1874, defendant, Dunning, executed to his co-defendant, Rachael N. Grace, his daughter, a deed conveying to her the northwest quarter of section 35 ; also the northeast quarter of section

34; also the east half of the northeast quarter of the northwest quarter of section 34; fifteen acres out of the southwest corner of southeast quarter of section 27, all in township 56, range 36; on that the 28th of March, 1874, said Dunning executed a deed to W. Grace, conveying to him the southeast quarter of the northeast quarter of section 28, township 56, range 36; that on the 4th day of May, 1874, he executed a deed to Sarah C. Williams, conveying to her the south half of the northwest quarter of section 27, township 56, range 36; that on the 24th day of October, 1874, he executed a deed to R. N. Grace, conveying to her the north half of the southeast quarter of section 21, and the northwest quarter of the southwest quarter of section 21, township 56, range 36; that all the grantees in said deeds were the children of the said Dunning, and that the deeds were without consideration, and fraudulent and void as to creditors; that all of the debts, aforesaid, were put into judgment in January, 1875; that executions were issued on said judgments during the months of March, April and May, 1875, which were levied upon the interest of said Dunning in all said lands, and at the sale made thereof by the sheriff on the 1st day of June, 1875, the plaintiff became the purchaser.

All the defendants, except William Dunning, R. N. Grace and her husband, and William Grace, made default, and judgment was taken against them accordingly. Defendants R. N. Grace and William Grace, filed answers, denying the allegations of the petition, and claiming to have bought the respective tracts of land conveyed to them, and to have paid a full price therefor. The issue on the answer of Wm. Grace was found in his favor, and that tendered by the answer of R. N. Grace, as to one-half the land conveyed to her in March, 1874, was found for plaintiff, and the finding was also for plaintiff for the 120 acres conveyed by said Dunning, in October, 1874, to her, and judgment was according rendered, from which defendants John Grace and R. N. Grace, after appropriate motions

for a new trial had been overruled, have appealed to this court. But two grounds of error are brought to our attention by the record : 1st. That the court erred in admitting evidence of the indebtedness of said William Dunning; and, 2nd. That the evidence does not justify the finding of the court.

It is urged, in support of the first alleged error, that the evidence should not have been received, because the 1 EQUITY PLEAD- petition is multifarious and defective in not ING: fraudulent conveyance. alleging a conspiracy between the defendants to defraud the creditors of said Wm. Dunning. This objection to the admission of evidence was not well taken. The reason given in support of it, we think, is answered by the case of *Tucker v. Tucker*, 29 Mo. 350. The plaintiff bases his claim for relief on one general right, and in such case the bill is not demurrable, although the defendants may have separate and distinct defenses. 20 Pick. 368 ; 3 Iredell Eq. 611; 6 John. Ch. 156.

When the facts, as disclosed in the record, are examined, we can find nothing in them authorizing an interfer-2. FRAUD. ence, by this court, with the decree and judgment in the case. It appears from the evidence that the defendant, Wm. Dunning, who was an old man, the owner of a large amount of real estate, and in good credit, reposed confidence in his son, J. M. Dunning, and had given him authority to sign his name to a few notes, according to the testimony of Dunning himself. This trust had been abused, and the name of the father was placed by the son on a large number of notes, as the father testifies, without authority, amounting in value to more than his entire estate, after setting off a homestead. Be this, however, as it may, when suits were brought on these notes, the father made default, and allowed judgment to go against him, and, in one instance, made a voluntary confession of judgment, thus by his refusal to answer in the first instance, and by his voluntary acknowledgment of the debt in the other, ratifying the acts of his son. As a subsequent ratifi-

cation of an act unauthorized when done, is equivalent to a previous authorization of the act, the debts on which these judgments were obtained, and under which the property in question was sold, are to be regarded as the debts of William Dunning, for the payment of which his property was justly liable. Several of these debts were contracted in 1870, and prior to 1873. One of them originated in 1864. The evidence shows that when the payment of these debts was sought to be enforced, all of the real estate of defendant had passed by virtue of various deeds by him executed to his children, leaving nothing out of which anything could be made on execution. As to the parties not answering, the deeds were confessedly voluntary and fraudulent as to creditors.

In reference to the deed executed in March, 1874, to R. N. Grace, the claim made by defendant that it was supported by a valuable consideration, free from fraud, so far as creditors are concerned, we think not well founded. It is true that the evidence tends to show that in 1873 the defendant R. N. Grace, conveyed a valuable tract of land, worth from six to ten thousand dollars, to the wife of J. M. Dunning, the son of Wm. Dunning, who had so freely used his father's name, and that William Dunning agreed to convey to her his home-place, consisting of 400 acres, which is embraced in the deed of March 11th, 1874. It appears from the answer that when this exchange, or transfer of lands, was first talked about, James M. Dunning, the son who had, as testified to by his father, signed his name without authority to various notes, and obtained money on the strength of his father's credit, joined in the proposition. In the answer of R. N. Grace, we find this language: "That the said William Dunning and James M. Dunning, proposed to defendant, Rachael N. Grace, that if she and her husband would convey to the said James M. Dunning, or his wife, Anna C. Dunning, the quarter section of land, the said William Dunning would convey to the defendant, Rachael N. Grace, all the real estate em-

braced in the deed executed by said Dunning, and his wife, to R. N. Grace, on the 11th day of March, 1874, mentioned in the petition, provided, however, the defendant, Rachael N. Grace, would agree and obligate herself to allow the said William Dunning to use and occupy one-half of all the real estate mentioned in said deed during his natural life." It is also further said in the answer: "That the defendants were put in possession of the land described in the deed of March 11th, 1874, and that they have held possession ever since subject to the use of one-half thereof by the said Dunning, during his life, as agreed between defendants and the said Dunning, in the summer of 1872, when these defendants agreed to convey the land mentioned in the deed to Anna C. Dunning. upon the terms herein before mentioned." The effect of this agreement was to put the land conveyed by Mrs. Grace to the son's wife, beyond the reach of the son's creditors, and the land to be conveyed to Mrs. Grace beyond the reach of the creditors of the father, thus leaving the children of old man Dunning in the full possession, not only of all the land they owned, but all that the father owned, with the right secured to the father to use and enjoy one-half thereof during his life, and to his wife the same use if she survived him.

Considering these facts in connection with the statement in the deed of March 11th. 1874, "that the consideration was $5,000 paid to James M. Dunning and natural love and affection," and the statement contained in the evidence of the father that "I had made a will, and by it gave my home-place to my son, James M. Dunning, and my daughter, Rachael N. Grace; after making this will I agreed to convey my entire home-place to Rachael N. Grace, provided she would convey her home-place to J. M. Dunning, or his wife;" the inference is plainly deducible that the 160 acres, conveyed by Mrs. Grace to J. M. Dunning's wife, was estimated at $5,000, and sufficient consideration for the undivided half that the son was to get under the provisions of the will, in the home place, consisting, as the

evidence shows, of about 400 acres, and the consideration of love and affection was to support the conveyance of the remainder.   If the land conveyed by Mrs. Grace to the son's wife had been esteemed by the parties to be of the value of the 400 acres conveyed by the father to Mrs. Grace, why insert the additional consideration of love and affection ?   Besides this, if the 160 acres of land conveyed by Mrs. Grace to James M. Dunning's wife, was esteemed by the parties of equal value to the 400 conveyed by the father, Wm. Dunning, to the daughter, Mrs. Grace, the son, who had betrayed the confidence of the father, would receive the entire estate of the father, and the daughter, nothing. In other words, Mrs. Grace would receive 400 acres of land, worth only as much as the 160 acres she was to convey to J. M. Dunning's wife, and half of the 400 acres thus received was to be encumbered with a life-estate of the father, Wm. Dunning.   This theory is in direct opposition to the intention of the father as expressed in the will previously made by him, that she was to get half his home-farm of 400 acres, and his son, James, the other half.   This is, doubtless, the view taken by the trial court in declaring that the deed of March 11th, 1874, to the extent of one undivided half of the land therein conveyed, was voluntary and without consideration, and void as to creditors."

Besides this, it further appears that at the time of the execution of the deed of the 11th day of March, 1874, 3. CONSTRUCTIVE Mrs. Grace, in connection with her husband, FRAUD : secret reservation of use. executed an obligation in writing, a part of which is as follows :   " We agree to give William Dunning full and complete control of the undivided half of all the real estate this day deeded to Rachael N. Grace by Wm. Dunning and Anna Dunning, his wife, during the natural life of said Wm. Dunning, and if the said Anna Dunning should survive her husband she is to have the same control of the said premises during her natural life.   Each party agrees to pay one-half the taxes."   This writing being executed cotemporaneously with the deed is to be read with

it. *Copeland v. Yoakum* 38 Mo, 349. It seems to be conceded by counsel in the argument, that if this reservation had appeared on the face of the deed it would have rendered it void as to creditors, and such seems to be the principle announced in the case of the *State to use, &c., v. Benoist,* 37 Mo. 500; *Robinson v. Robards,* 15 Mo. 459; *Bigelow v. Stringer,* 40 Mo. 195. It also seems to be conceded that if said writing was executed according to the original agreement between said Dunning and Mrs. Grace, it would have the same effect. It is, however, argued that it was not so executed. This argument is fully answered by the statements of the answer hereinbefore referred to, which conclusively show that it was made in pursuance of the original agreement. This secret trust, whereby the use and control of one-half the land conveyed was to be exercised by the said Dunning as if he had never conveyed it, is evincive of legal, if not actual fraud on the part of all concerned.

The question as to whether the trust was created with intention to defraud creditors was proper to be considered by the court, and with its finding in that respect we can see nothing in the evidence justifying our interference. Judgment affirmed, in which all concur.

AFFIRMED.