Stuck *v.* The Southern Steel and Aluminum Alloy Co.

The plaintiff's petition alleging several distinct and independent causes of action against separate and distinct parties and praying for relief in different forms severally against each of them, and these causes of action not being so connected with or dependent upon each other as to make a joinder of them in one and the same action necessary or proper, the court was right in sustaining the demurrer to the petition.

April 8, 1895.  By two Justices.  Brought forward from the last term.

Equitable petition.  Before Judge Henry.  Floyd superior court.  March term, 1894.

The petition alleged: On July 22, 1892, Stuck and Hartfeld, citizens and residents of Newport, Ky., in contemplation of and preliminary to forming a corporation to be known as the Southern Steel & Aluminum Alloy Company of Newport, Ky., and taking out articles or charter of incorporation under the laws of Kentucky, entered into an agreement as follows: In consideration of a dollar by each to the other paid, and of the agreements mutually to be kept and performed, it is agreed that upon the formation and organization of the Southern Steel & Aluminum Alloy Company of Newport, Ky., Hartfeld will convey to said company the sole and exclusive right to manufacture aluminum alloy composites and weldable castings of the metal known as Schmeidbarengus, in Alabama, Georgia and Tennessee, and to sell and dispose of said products in any market.  Stuck agrees to procure a suitable lot in Rome, Ga., erect on it a suitable building and provide the necessary power in said business, and Hartfeld agrees to furnish to said company one twenty-ton water-jacketed smelting-furnace complete; all of said property to be the sole and

exclusive property of said company, and all of said arti-
cles to be furnished by said parties at cost price and
without profits to them.   When the price of the articles
has been determined, the difference in value shall be
paid to the party expending the highest amount of the
money on his part to be expended in the said purchase.
Stuck is to devote his entire time and attention to said
business and is to be the president of the corporation.
Hartfeld agrees to go in person to Rome, erect the
furnace in a good workmanlike manner, so that it will
produce the desired result, and fully instruct Stuck as
to the mode and manner of [manufacturing] said com-
posites and metal; the instructions and knowledge of
manufacturing said articles to be for the sole and exclu-
sive use and benefit of said corporation, and not to be
communicated by Stuck to any person.   Stuck shall
have the right to employ all suitable labor necessary for
the proper conduct of said business.   No stock belong-
ing to Stuck, Hartfeld or Blakely shall be sold without
offer first having been made to the company and refused
by it.   No more than half the amount of capital stock
shall be issued until ordered by a board of directors of
the company.   Hartfeld and Stuck agree to pay into
the treasury of the company, when ready for active op-
eration, $1,000 each, as a working capital.   The settle-
ment between the parties as to the indebtedness which
may be found from one to the other shall be made, and
the difference settled between them, before beginning
active operation.   Hartfeld agrees not to sell any of such
composite or metal during the continuance of said cor-
poration in Tennessee, Georgia and Alabama, but is
to turn over the same to said corporation.

On July 22, 1892, in contemplation of this agreement
publication was made and other formalities gone through
with as required by law, the publication under the Ken-
tucky law being the charter or articles of incorporation

of said company. Said articles were set forth in the petition, together with the certificate of the clerk of the county court of Campbell county, Kentucky. In addition to general corporate powers the articles provide, so far as seems material here: The general nature of the business to be transacted shall be the production, manufacture and sale of aluminum and aluminum alloy composites and weldable castings. The principal place of business shall be Newport, Ky., but branch offices may be established wherever the business of the corporation may require. The capital stock shall be $100,000, divided into 1,000 shares of the par value of $100 each, to be paid up in money or property of its market value when subscribed for, as may be agreed upon between the corporation and the subscribers, and all stock issued to be fully paid up and non-assessable. The corporation shall begin its corporate existence July 23, 1892, and continue twenty-five years. Its affairs shall be conducted by a board of three directors elected July 23, 1892, and the same day annually thereafter. Its officers shall be a president, secretary and treasurer, and such others as may be deemed necessary, to be elected annually. Stuck and Hartfeld shall organize the company and exercise all the powers of a board of directors until the same shall be chosen as provided herein. The highest amount of indebtedness or liability to which the corporation shall at any time subject itself, shall not exceed one fourth the amount of its capital stock. No stockholder shall sell, convey or transfer any part of his stock without first offering it to the company for purchase. The private property of the incorporators and stockholders shall be exempt from liability for all indebtedness of the corporation.

On July 23, 1892, the corporation was duly organized and by-laws were adopted. These by-laws are set forth in the petition. At said meeting the capital stock was

subscribed, 250 shares of which were issued to Stuck, 225 to Hartfeld and 25 to Blakely, the last by direction of Hartfeld out of that which otherwise would have been issued to him (he and Stuck being alone interested in the corporation), solely to make Blakely eligible as a director in the company. The board of directors elected at the meeting were Stuck, Hartfeld and Blakely, and the board at once organized by the election of Stuck as president, Hartfeld as superintendent, and Blakely as secretary. No treasurer was then elected nor has one been since elected. In compliance with the agreement of July 22d, Stuck came to Rome, purchased with his own funds a suitable lot (described), for $720.75, erected thereon a suitable building and purchased and provided the necessary power in the way of machinery, for the location and operating the smelting furnace and business. He took title to the lot in his own name, but at once had prepared a deed thereto from him to the company, to be delivered whenever Hartfeld should comply with his undertaking in the agreement of July 22d; and Stuck now stands ready to deliver said deed to the company whenever the court shall so direct. In the erection of the necessary buildings, and in the purchase and placing of the machinery and power, as provided in the agreement of July 22d, he expended $2,215.16 out of his private funds. About November 28, 1892, the furnace which Hartfeld had agreed to furnish was shipped by him to Rome, and at his special instance and request Stuck paid freight and other bills connected therewith, amounting to $185.83, which has never been repaid to Stuck. All the articles and things furnished by Stuck were so furnished at their actual cost price, according to said agreement, but Hartfeld billed the furnace at a sum largely in excess of its cost to him, and insisted, and still insists, that in the accounting between him and Stuck, under said agreement, Hartfield should

be credited with $2,450, when in fact the furnace cost Hartfeld not exceeding $925. Although Stuck had paid out, before active operations began, a sum largely in excess of what had been paid out by Hartfeld, he was never able to effect any settlement with Hartfeld, as provided in the agreement; he has never been able to get from Hartfeld a statement of the actual cost of the furnace, or of anything else furnished by Hartfeld. Prior to beginning operations of the plant, Stuck had expended $2,935.91 under said agreement, while Hartfeld had expended less than $1,200; and there is now due to Stuck from Hartfeld under said agreement $867.96. Hartfeld has never conveyed to the company the sole and exclusive right to manufacture said composite and weldable castings of said metal in Alabama, Georgia and Tennessee, and dispose of said products in any market. Stuck has devoted his entire time and attention to the business of the company, without having received any remuneration therefor. His services have been valuable, and he should be allowed a reasonable sum therefor from July 23, 1892, to September 2, 1893, when the company ceased operations. While Hartfeld did come to Rome and erect the furnace, and pretended to communicate to Stuck the secret of the manner of manufacturing the composite, he never even pretended to communicate to Stuck the secret of the manufacture of the metal, and as to the metal or composition known as aluminum alloy composite, the secret of the manner of manufacture was so imperfectly communicated that the product was never satisfactory to the purchasers of it, and large amounts of it have been thrown back upon the company as worthless, the purchasers in a great number of instances refusing to pay for it; nor was the smelting furnace so erected as to produce the desired results, Hartfeld himself having admitted to Stuck that such was the case. As president of the company Stuck has made

repeated demands upon Hartfeld that he put the furnace in such condition, and give Stuck such instruction, that a salable article of aluminum alloy composite can be made by the company, and that Stuck be also instructed as to how to manufacture said metal; but Hartfeld has failed and still fails and refuses to comply with any of said demands, nothwithstanding that a communication of such knowledge is a large part of the capital of the company and prerequisite to a successful operation of its plant at Rome. Said plant, consisting of the realty and machinery mentioned, is the only visible or tangible asset of the company; the company not operating otherwise or elsewhere. When the company was ready or thought to be ready for active operation, on February 1, 1893, Stuck had already expended for material, etc., necessary to the carrying on of its business, $801.40 above what was agreed and contemplated to be furnished by him in procuring the lot, erecting the building and providing the power, under said agreement of July 22d, and the company now owes him $934.40; but Hartfeld, when the $1,000 (to be paid in for working capital as provided in the agreement) was demanded of him, refused to pay it into the treasury, or to the company, or to Stuck as president, or to pay any sum, saying that Stuck and he would do away with that clause in said agreement, leaving the company without any working capital, except what had been before furnished by Stuck. On December 14, 1892, before active operations had been begun by the company, Blakely borrowed of Stuck $50, giving his note therefor, and to secure its payment pledged to Stuck, with the consent of Hartfeld, the certificate for the twenty-five shares of stock before mentioned; and Blakely failing to pay the note, the certificate was by Stuck legally sold after due notice, and after being offered to the company, was bought in by Stuck and is now his property. This sale took place October 3,

1893, since which time the whole of the stock issued has been in the name of and belongs to Stuck and Hartfeld. The company owns no tangible property outside of Floyd county, Ga., and all its assets are there except the debt due it by Hartfeld, by Hartfeld Refining Company, and certain other debts for composites, the purchasers of which have declined to pay, alleging as a reason that the articles so sold were worthless. Hartfeld refuses, as above alleged, to instruct Stuck or the company how to manufacture the composite or metal, so that the company has no future prospect of making money, is without a business and can do nothing. Stuck does not know whether there is any real value to the composition known as aluminum alloy composite or that it can be made from bauxite or other raw material; but Hartfeld has never, so far as he knows, been able to produce any composition from bauxite that the trade regarded as of any value; and as soon as Stuck ascertained the worthlessness of the product known as aluminum alloy composite, the company ceased to manufacture it, and of a large amount sold under flaming advertisements prepared by Hartfeld, its real or pretended discoverer, only $2,410.68 has been or can be collected. Hartfeld resides in Kentucky, is insolvent, has no property in Georgia subject to the jurisdiction of the court, except the interest he owns in the company, and has repeatedly tried to have the stock held by him transferred to his wife, in violation of his agreement and the by-laws of the company. On September 2, 1893, Stuck sued out an attachment against the company, and on the same day an attachment against Hartfeld, both being returnable as stated in the petition, the first of which was levied on a boiler, two steam pumps, an engine, the furnace and certain other things mentioned, and the attachments were also levied upon the realty before described; the attachment against Hartfeld being at the same time levied on

all the right, interest, etc., of Hartfeld in said property. Declarations in attachment have been filed in both these suits, and there has been appearance by attorneys in each, but no written defense filed. J. M. Stewart has sued the company in the city court of Floyd county, for $212.50; and it has also been sued in a magistrate's court of the county, by the Coal City Mining Company, for $33.15. The company is indebted to Illinois Fluor Spar & Lead Company of Chicago, Ill., for a car-load of fluorspar $120, and suit therefor is threatened. It owes other small debts, all likely to be sued, beside taxes for 1893, which Stuck will have to pay out of his private funds to prevent a sale of its property. It is insolvent, and sale of its property will be necessary for payment of its indebtedness. Its machinery and other property is idle and unprotected and liable to be destroyed or stolen, there being no funds on hand to pay for insurance or for a guard. Its assets are liable to be wasted and disposed of, and will be wholly insufficient to meet its liabilities, especially so if *fi. fas.* are allowed to be levied thereon and piecemeal sales made. The prayer is, that Stewart and the Coal City Mining Company be restrained from levying any *fi. fa.* they may obtain against the company upon its property; that an auditor be appointed to ascertain and report the indebtedness of the company, the indebtedness of Hartfeld to Stuck and the indebtedness of Hartfeld to the company; that a receiver be appointed for the property of the company; that Stuck may have a decree against the company and its property, and against Hartfeld and his interest in the property, for the amounts respectively due him, and against Hartfeld and his interest in the property for the amount found due by Hartfeld to the company; that Stuck be allowed to file this petition as an original petition and in aid of his attachment suits, and that the rights etc. of all parties be determined hereunder; for general relief, and for

process against the company, Hartfeld, Stewart and the Coal City Mining Company.

By amendment, Stuck alleged: Before the agreement of July 22, 1892, Hartfeld, in order to induce Stuck to enter into said agreement, showed him pretended testimonials and indorsements with reference to such composite and metal, of which Hartfeld claimed to be the inventor and to alone know how to manufacture it. It was upon the faith and credit of these that Stuck signed said agreement, became a stockholder in the company and invested his money therein. The amendment sets forth what these alleged testimonials and indorsements pretended to show, and alleges that many of the names attached thereto did not exist, were used without authority or were clumsy forgeries, and that these testimonials were inventions of Hartfeld. Hartfeld and his methods, as well as said composite, have been denounced as a fraud by a number of journals of the country. He has operated his fraudulent scheme under various names, and on July 22, 1892, was operating under the name of Hartfeld Furnace & Refining Company of Newport, Ky., which is a small concern with little if any capital, and it and Hartfeld are to all intents and purposes the same. Hartfeld has no property in Georgia subject to levy and sale. Stuck's services as president as before mentioned are worth not less than $125 per month from July 23, 1892, to September 1, 1893, and he asks judgment against the defendant company therefor. Said company owned the exclusive right to manufacture, sell, use and erect in Alabama, Georgia and Tennessee the Hartfeld Water-Jacketed Smelting-Furnace, patented March 23, 1868, though Hartfeld has sold to S. W. Devine of Chattanooga, Tenn., one of said furnaces for $950, and it is now in operation at Blue Springs, Tenn., for which Hartfeld is indebted to said company, said sale having been made by him within the

past seven months. Hartfeld has in Alabama, Tennessee and Georgia attempted to make other sales of said furnace, and has either sold or attempted to sell one to A. R. Bryan of Atlanta, Ga.; and petitioner prays that the receiver appointed by the court be required to bring suit for the purchase price of any and all of said furnaces that may have been sold by Hartfeld in said three States. Hartfeld is indebted to the company $300 for profits on Eureka furnaces sold by said company, for which either Hartfeld or his mask, the Hartfeld Furnace & Refining Company, has collected; and petitioner prays that Hartfeld and his said company be held liable to the Southern Steel etc. Company in the accounting before the auditor. In all sales and representations made by petitioner with reference to said composite, he was governed entirely by the representations thereof made by Hartfeld to him. Petitioner prays that Hartfeld be enjoined from disposing of his said patent in Tennessee, Alabama and Georgia, which is the only asset of any material value outside of said plant. No money was ever paid in by any of the stockholders in the Southern Steel etc. Company, and the only money ever paid into the company was that paid in by petitioner in running its business.

On behalf of the company and Hartfeld a demurrer on the following grounds was filed: (1) The petition is multifarious, in that it seeks to set up and establish a claim between Stuck and Hartfeld, under a contract made between themselves, with which the Southern Steel etc. Company has no connection or interest whatever; and at the same time it seeks to set up and establish a claim of indebtedness between Stuck and the company, with which Hartfeld individually has no connection or interest whatever. (2) Plaintiff seeks to set up and maintain rights in behalf of the company, without alleging facts sufficient to authorize him, individu-

ally or as a stockholder, to bring such action.  He does not allege or show that the corporation or its proper officers have ever refused to bring suit in behalf of the company for the recovery and maintenance of the claims and rights of the company against Hartfeld, as set out in the declaration; nor that demand has been made for the bringing of such action.  The company is made a party defendant to an action seeking to establish the company's rights, without alleging or showing reasons why the company is not a party plaintiff.  (3) Plaintiff shows by his petition that he has already brought in the proper court and in the proper manner an attachment which is altogether sufficient to establish any rights he may have in the suit against said Hartfeld, and an attachment suit against the corporation, to recover any claim or demand that he may have against it; and there is no necessity shown in the petition why an additional suit should be brought, joining Hartfeld and the company as defendants in the same cause.  (4) Plaintiff in his attitude as creditor shows no lien in his favor against the property of the company, nor that he has an unsatisfied judgment with an execution returned *nulla bona.*  (5) The petition shows that the defendant company is solvent.

J. W. EWING, W. W. VANDIVER and C. A. THORNWELL, for plaintiff.

A. R. BRYAN, DEAN & DEAN and HALSTED SMITH, for defendants.

SIMMONS, Chief Justice.

The equitable petition of Stuck against the Southern Steel & Aluminum Alloy Company, and against Hartfeld, Stewart and the Coal City Mining Company, was demurred to, and the demurrer sustained; and to this ruling the plaintiff excepted.  The petition and the demurrer are set out, in substance, in the reporter's state-

ment. Briefly stated, the main allegations of the petition are, that the defendant Hartfeld is indebted to the plaintiff a certain sum by reason of the failure and refusal of Hartfeld to carry out a contract which he had made with the plaintiff; that Hartfeld is also indebted to the Southern Steel & Aluminum Alloy Company a certain sum which he refuses to pay, said indebtedness arising out of contracts between Hartfeld and the corporation; and that said corporation is indebted to the plaintiff a certain sum for services rendered the corporation by the plaintiff, which sum it refuses to pay; that suits have been brought against said corporation by Stewart and the Coal City Mining Company, and that other parties to whom it is indebted threatened suit against it; that said corporation and Hartfeld are both insolvent; that the plaintiff has brought suit in the proper court against them separately, for the amounts claimed in the petition to be due from each of them, that said suits were brought on attachments, under which the plaintiff holds the property of the defendants, and that the suits are still pending. The petition prays that Stewart and the Coal City Mining Company be restrained from levying any *fi. fa.* they may obtain against the company, upon its property; that an auditor be appointed to ascertain and report the indebtedness of the company, the indebtedness of Hartfeld to the plaintiff, and the indebtedness of Hartfeld to the company; that a receiver be appointed for the property of the company; that the plaintiff may have a decree against the company and its property, and against Hartfeld and his interest in the property, for the amounts respectively due the plaintiff, and against Hartfeld and his interest in the property for the amount found due by Hartfeld to the company; that the plaintiff be allowed to file this petition as an original petition and in aid of his attachment suits, and that the rights of all parties be deter-

mined thereunder; and for general relief. By amendment it was prayed that the receiver appointed by the court be required to bring suit for the price of certain furnaces sold by Hartfeld, and that Hartfeld be enjoined from disposing of his interest in certain patent rights.

This petition is clearly multifarious. It alleges distinct and independent causes of action against separate and distinct parties, and prays for relief in different forms against each of the defendants; and these causes of action are not so connected as to make a joinder of them in one and the same action necessary or proper. The court therefore did not err in sustaining the demurrer. See Story, Equity Pleading, §271; *Marshall* v. *Kendrick*, 12 *Ga.* 61; *Stephens* v. *Whitehead*, 75 *Ga.* 298.

*Judgment affirmed.*