Ector, transferee, vs. Ector.

WALTON ECTOR,' transferee, plaintiff in error, vs. W. B. EC-
TOR, defendant in error.

An execution is issued in 1841—money is collected on it from the sale of de-
fendant's property in 1846; in 1848, there is a return of *no property*; in 1850
money is raised on a *fi. fa.* in favor of the defendant, and paid over by order of
Court to this execution, against him, which is receipted for on the *fi. fa.* by
plaintiff's attorneys.

*Held*, That the execution is not inoperative under the dormant judgment Act
of 1828.

Claim, from Meriwether county.    Decided by Judge BULL,.
February Term, 1858.

In October 1841, George D. Sharp obtained a judgment
against Joseph L. Welch for $2,833 00, upon which execu-
tion was issued.   This was assigned in November, 1841, by
George D. Sharp to Walton Ector, for value received.   In.
1856, a levy of said *fi. fa.* was made by the Sheriff on cer-
tain negroes.

W. B. Ector, as guardian of Elizabeth Johnson, claimed that
the negroes so levied on as the property of Welch, did not
belong to him, but were the property of the said Elizabeth.

When the case came on for trial, the plaintiff in execution
offered in evidence the original execution, and the record
from the Superior Court of Crawford county.

The counsel for the claimant objected to the admission of
the same in evidence, on the ground that the execution and
judgment on which the same was founded, were 'dormant.

The Court sustained the objection, and on motion by the
counsel for the claimant, granted an order dismissing the levy ;
to all of which rulings the plaintiff in execution excepted,.
and by his bill of exceptions assigned the same as error.

DOUGHERTY and BUCHANAN, for plaintiff in error.

HILL, for defendant in error.

Ector, transferee, vs. Ector.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The question in this case is simply this, whether the action of the Court in Crawford county, saved this execution from the operation of the dormant judgment Act.

This Court when the dormant judgment Act first came before it for construction, following the lead of the Judges in convention, departed from the letter of the statute, and interpreted it by its reason and spirit. 2 *Kelly* 252. The Act declares that "all judgments that have been obtained since the 19th day of December, 1822, and all judgments that may be hereafter rendered in any of the Courts of this State, on which no execution shall be sued out, or which executions, if sued out no return shall be made, by the proper officer, for executing and returning the same, *within seven years from the date of the judgment,* shall be void, and of no effect."— *Cobb* 498.

In this case, the execution issued within seven years from the date of the judgment, and a return was made thereon, within seven years from the date of the judgment, by the proper officer executing and returning the same. The words of the Act were then fully complied with. But this Court held in *Booth and Williams,* that the entry must be made *every seven years.* Very well : to be consistent with ourselves, it became our duty to construe the Act according to its spirit, and this rule we have uniformly adhered to ; commencing with the case, *Wiley et al. vs. Kelsey et al.,* 3 *Kelly* 274, where we held, that if an execution is not barred at the time it comes into Court to claim money, the statute cannot subsequently attach, pending the litigation respecting the distribution of the fund: and coming down to *Worthy vs. Lowry,* 19 *Ga. R.* 517, in which this Court adjudged, that the issuing of a *ca. sa.* was a sufficient act to keep a judgment from becoming dormant.

We cannot retrace our steps, unless we are prepared to go back to the beginning and decide, as we should have done

when the point was first presented, that an entry within seven years from the date of the judgment, satisfied the demand of the Act, and left it to the Legislature to provide, that the entry should be renewed every seven years. If the Act is worth any thing, and that it is greatly overrated, I have no doubt, its provisions should have been extended. The trouble now is, in knowing how much, and what kind of action is sufficient to answer the equity of the statute.

This Act was passed for the protection of innocent purchasers and vigilant and *bona fide* creditors. *Cobb* 496. As to the defendant in *fi. fa.*, he must be presumed to know when money belonging to him is paid out to an execution under an order of the Court. He is not therefore within the perview of the Act. Money is raised in Crawford county, in favor of Joseph J. Welch the defendant in this *fi. fa.* against Robert McCrary; and paid over to this *fi. fa.* against Welch, by order of the Court, and receipted for on the *fi. fa.* by Adams, Knight & Ector, the attorneys of the plaintiff's assignee. Is not the publicity of this transaction quite equal to a return of *nulla bona*, or a receipt of five dollars upon the execution by the Sheriff or Constable? Does it not demonstrate in point of fact, that the creditor is actively endeavoring to collect his money? What more could he do? In 1846, he received from the sale of a sorrel horse, forty-nine dollars, thirty-seven and a half cents, upon the execution.

As late as 1848, a return of no property was made upon the *fi. fa.* In 1850, he ascertains there is two hundred and fifty-six dollars and eighty-five cents raised in Crawford county, in favor of Welch, and having the oldest lien against Welch, he has this fund appropriated to the payment of his debt, under an order of the Court. All this indicates activity in enforcing his demand.

It is complained, that he did not levy earlier upon the property, which is the subject matter of this litigation. Perhaps

a sufficient answer to that is, that so soon as the negroes were levied on, a claim was put in, and the title contested.

The Sheriff of Crawford county, who held Welch's money, should have entered the credit upon the Ector *fi. fa.* for the amount paid to it, and not the attorneys. Had that been done with the additional entry, that the sum so credited was paid out to the assignee's attorneys, all would have been right and regular, and this case never have come here. Is not this the substance of what has been done? Could it not, if necessary, be done now, by way of amendment to the Sheriff's return? Why not? There may be mistake or irregularity in this case, there is no fatal laches under the statute.

Judgment reversed