HILL W. HOWSE, RESPONDENT, vs. MOODY, HOWARD et al., APPELLANTS.

1. Where the subject of an action is real or personal property, and the plaintiff seeks to set aside fraudulent judicial proceedings in reference thereto, he should make all persons parties who were actors in such proceedings, and who claim a present interest in the specific property. Such a complaint is not liable to the objection that there is an improper joinder of several causes of action against different persons. It sets up one cause of action against all of them.

2. A cause of action against the sureties upon the bond of an administrator, arising from a breach of the condition of the bond, cannot be united in the same complaint with a cause of action against the administrator arising from acts of the deceased intestate in fraudulently disposing of his property. This is an improper joinder of several causes of action against different parties in the same complaint.

Appeal from the Fifth Judicial Circuit—Marion county. The opinion of the court contains a statement of the case.

*Thomas F. King* for Respondent.

*Finley & Finley* for Appellants.

WESTCOTT, J., delivered the opinion of the court.

This complaint is filed against defendants Howard and Moody, as administrators of the goods and chattels of E. D.

Howse, against Moody, Chandler & Branch, as persons claiming an interest in certain property of the intestate, which they acquired through deeds of conveyance and judicial proceedings obtained by the fraudulent collusion, combination and acts of E. D. Howse in his lifetime, and of the parties Howard, Moody, Chandler & Branch since his death, and against Agnew and Roberts as sureties upon the administration bond of the said administrators, Howard and Moody, alleging as cause of action against them the failure of the administrators to file a true inventory, and that they have not truly administered according to law.

To the complaint the defendants interposed a demurrer, specifying several grounds of objection. The Circuit Court, after argument, overruled the demurrer, with leave to the defendants to answer. From this order the appeal is prosecuted.

While there are several grounds embraced in the demurrer contained in the return to this court, one only was urged or relied upon here.

This ground is because several causes of action are improperly united in the complaint, in that it embraces a demand against the estate of E. D. Howse, an action to set aside and declare void a decree in chancery rendered against E. D. & C. C. Howse, and in favor of Little Berry Branch, an action to set aside a sale of property of the estate of E. D. Howse, made under judicial process, and an action to recover damages against the sureties upon the bond of the administrators of said Howse.

In order to understand this demurrer, it is necessary to state the allegations contained in the complaint. They are substantially that Edward D. Howse died in 1867 owing plaintiff the sum of $6,528, which sum was due since January, 1857; that defendants Slowman W. Moody and James H. Howard were appointed in July, 1868, administrators of the goods and chattels, &c., of the said Howse, and that

defendants Samuel Agnew and —— Irby are sureties upon the bond of the said Moody and Howard as such administrators; that plaintiff has repeatedly applied to the said administrators for payment of his said debt, but they refuse so to do, alleging insolvency and a want of assets; that in 1860, and during the life of said Howse, defendant Little Berry Branch filed a bill in chancery, in Marion county, Florida, against the said E. D. Howse and his wife, Cynthia C. Howse, praying payment of a sealed note alleged to have been made by Howse and wife, dated February 10th, 1849, for the sum of $6,500, and payable one day after date; that said Branch further alleged in said bill that Howse had no property in his own right, but that Cynthia, in her own right and separate from her husband, possessed a large amount of real and personal property; that the said Howse and wife filed an answer to said bill admitting all of its allegations, but alleging that the said Cynthia owned only a small amount of lands; that defendants having waived notice, the case was set for hearing upon bill and answer by consent, and that a decree was rendered on the 14th February, 1860, for $11,075.77, against defendants, and a fi. fa. awarded to be levied on the property of the said Howse, and when that was exhaused to be satisfied from the property of the wife. Plaintiff charges that the making of the note was a mere pretense; that the understanding and agreement between Branch & Howse was that it was to be used to obtain the decree aforesaid; that said decree was obtained to secure the property of Howse from then existing valid and just claims, and with the understanding that the property should remain in the possession of the said Howse; that all of said judicial proceedings were fraudulently and collusively conceived and executed to protect the property of the said Howse from his creditors, and that, except a small portion, all of said property, when sold, remained in the possession of Howse for seven years, and up to the time of his death;

that Branch, during all this time, received nothing upon said decree, nor did he attempt to enforce it; that ten days before the appointment of Howard and Moody as administrators of Howse, the said Moody obtained from Branch an assignment and transfer of said decree; that the transfer was made without consideration or for a nominal amount, and with a knowledge upon the part of Moody that the decree aforesaid was obtained for the fraudulent purposes aforesaid, and that it was not a just or valid claim against the estate of Howse; that in October, 1868, Moody caused said property to be sold by a master under said decree; that he (Moody) became the purchaser of both the real and personal property thus sold—his agent, S. D. McConnell, purchasing the cattle and other personal property, and his agent, W. A. Chandler, purchasing the real estate; that prices far below the real value were paid for said property, and that the deed to the real property was made by the master to W. A. Chandler; that said property was bid off by Chandler in pursuance of an agreement between himself and Moody that he (Moody) was to have the property, and that said Chandler "did not pay one dollar of his own money for said land;" that said Moody has since controlled the property; that on the 7th January, A. D. 1861, lot 2 and one-quarter of a section of land was sold at the instance of the solicitor of the complainant Branch, for his fees in the said chancery proceedings, for $705; that the said Howse and Branch became the purchasers thereof; that in October, 1861, this land was sold by Branch to Moody for $8,000; that this sale to Moody, who was the son-in-law of Howse, was for the purpose of securing the property from Howse's creditors; that no consideration was ever paid by Moody, but by an arrangement between Branch, Moody and Howse the said property was to belong to Howse; that the estate was solvent when it came to the hands of the administrators Howard and Moody; that there has been neglect in the col-

Hill W. Howse v. Moody, Howard, et al.

lection of the notes due the estate; that the administrators have rendered false accounts of the property, and have caused the estate to be found insolvent; that they have failed to file a true inventory of the estate; that they have not duly administered according to law, and that the said sureties are liable for these failures.

It may not be inappropriate to remark here that the prayer of the complaint is in some respects defective. If there are other creditors of equal degree, the whole of this property should not be applied to the payment of this claim alone. 4 John. Chy., 640.

From the foregoing statement it is seen that in this action the plaintiff seeks to establish his debt against Howse, and to subject certain property to sale. This property, he alleges, has been made the subject of sale under decrees which are fraudulent and collusive; that the property was purchased in at nominal prices for the benefit of the debtor by parties aware of the fraud, and that the proceedings were conceived and designed by the parties thereto to benefit the debtor at the expense of his then existing creditors; that the defendant in this decree was at the time indebted to him (the plaintiff), and that the plaintiff in the decree was not a *bona fide* creditor, and that the property has never been impressed with any equity superior to that of the creditor plaintiff.

It is apparent from the case stated that all of the defendants were not jointly and equally concerned in each distinct fraudulent act charged. There was a series of acts in this well conceived net-work of fraud, all terminating in the deception and injury of the plaintiff. The defendants performed different parts in the drama. These acts affected the property of the debtor—some the personal property, others the real estate. The object of the plaintiff in this complaint is to get the assistance of this Court in unraveling this net-work of fraud in respect to each species of property,

and to have a due application of the same to the payment of the claims of creditors.

The right of the plaintiff is against the whole property, and his right against all portions of it is of the same nature. The decree in chancery and the sale thereunder are but acts of fraud, which are sought to be set aside in order to enforce this general right. In fact, the right to set aside these proceedings can only co-exist with an equity affecting the property which was the subject of them. There can be no such thing as an equity or right to set aside these proceedings distinct and independent of rights and equities attached to the subject-matter that they affect. The result is that these are not several causes of action, but are acts which, connected with the debt due plaintiff, constitute a ground for one action alone. There can be no doubt that the debt could be proved and the property reached in the same action in a case like this, notwithstanding the decree and sale, anterior to the Code, (4 Mon., 580, 83; 4 John. Chy., 620, 631; 2 Black., 421; 7 Cranch, 89; 6 John., 139;) and there is no doubt that it can be reached in this action under the Code. 17 New York, 593.

What has been said disposes of all the grounds of the demurrer except the objection that the complaint unites with the cause of action against the administrator and the parties Moody and Chandler, a distinct and separate cause of action against defendants Agnew and Roberts, arising out of their relation as sureties upon the bond of the administrators Moody and Howard. It is true that these fraudulent proceedings and the fraudulent sale of the property which was the subject of them is one cause of action, and the liability of the sureties upon the bond of the administrators for any breach of its condition is another cause of action. We have here, therefore, in this complaint several causes of action, and if they have been improperly united the demurrer is well taken. Par. 5, § 95, p. 35, Code.

Hill W. Howse v. Moody, Howard et al.

The question, therefore, is, can the two causes of action before stated be united properly?

The Code provides that the plaintiff may unite in the same complaint several causes of action, whether they be such as have heretofore been denominated legal or equitable, or both, in cases where they all arise out of the same transaction, or transactions connected with the same subject of action. The several causes of action which may thus be united, however, are restricted to causes affecting all the parties to the action; and it is required that the several causes of action must be separately stated. Par. 1, § 117, pp. 39 and 40, Code. In this case each cause of action does not, in itself affect all the parties. It is not sufficient that some of the defendants be affected by each of them. All of the defendants must be affected by each of them to warrant the union of them in one suit. The defendant Chandler in this suit has no connection with the sureties, nor have the sureties upon this bond any connection with the cause of action resulting from the fraudulent acts of the intestate and the acts of the other parties, in so far as they relate to the first cause of action stated. The setting aside of these proceedings and the selling of this property has no necessary connection with the liability of the surety upon the administration bond. The plaintiff here attempts to exercise two separate and distinct rights, one to sell the property to satisfy his debt, the other to hold these sureties liable for a breach of the condition of their bond. The equitable relief he seeks against one set of defendants, the legal against another set, not including all of the others.

There is here an improper union of two causes of action. Mr. Justice Comstock, speaking for the Court of Appeals of New York, (17 N. Y., 607,) uses the following language in reference to this provision in the Code: " The authors of the Code, in framing this and most of its other provisions, appear to have had some remote knowledge of what the

previous law had been. This provision, as it now stands, was introduced in the amendment of 1852 because the successive Codes of 1848, 1849 and 1851, with characteristic perspicuity, had in effect abrogated equity jurisdiction in many important cases by failing to provide for a union of subjects and parties in one suit indispensable to its exercise. This amendment, therefore, was not designed to introduce any novelty in pleading or practice. Its language is, I think, well chosen for the purpose intended, because it is so obscure and so general as to justify the interpretation which shall be found most convenient and best calculated to promote the ends of justice."

The order appealed from is reversed, and the defendants should have judgment upon the demurrer, with leave to the plaintiff to amend on payment of costs.