## CONLEY et al. v. BUCK.

1. An equitable petition by a judgment creditor against the defendant in execution and others alleged, in substance, that they had all entered into a conspiracy to defeat the collection of the debt upon which the judgment was founded, that the common object of all the conspirators was to "hide" and "cover up," in the names of the coconspirators other than the defendant in execution, property which really belonged to him, and that in pursuance of this object various deeds had been executed purporting to convey specified parcels of realty to these coconspirators, which in fact belonged to the judgment debtor; the particulars in each instance being set forth. The petition prayed for the cancellation of the various conveyances which were, for the reasons stated, alleged to be fraudulent; and for a judgment subjecting all the property to the petitioner's exe-

cution. *Held*, that this petition was not demurrable as failing to set forth an equitable cause of action, nor as being multifarious, nor for want of sufficient fulness in stating wherein the alleged fraudulent acts of the several defendants consisted.

:2. There was no error on the trial of such a case, while the court was submitting to the jury the question as to whether or not a given deed from the defendant in execution to his wife, she being one of the defendants to the petition, was made with intent to hinder, delay or defraud the husband's creditors, in charging, in substance, that if the husband made the deed with such intent, and this was known to the wife, it was void as to the creditors, "even though it may appear that she had paid a valuable consideration"; nor in charging that if in accepting such deed she did so with the intention and purpose of delaying or defrauding such creditors, the deed would be void "although it may have been based upon a valuable consideration."

:3. That numerous instructions given by the court to the jury may not have been precisely and in every respect adjusted to the facts in evidence is not cause for a new trial, when it appears that these instructions were in themselves correct propositions of law, and that they contained nothing which could have misled the jury or in any way have tended to prevent their reaching a correct conclusion upon the real issues involved.

4. Where an equitable petition was brought for the purpose of enforcing the collection of a judgment not then dormant, the filing of such petition was of itself sufficient to prevent the running of the dormancy statute as against such judgment, so long as the equitable action was pending.

:5. Where a defendant in a bail-trover action gave the bond required by the statute in such cases, and one of the sureties on that bond took from the principal in the same an indemnifying mortgage which was really for the benefit of this surety only, though it contained a general stipulation that he might under certain circumstances take possession of the mortgaged property "for the benefit and security of himself and cosureties on said bond," the fact that this mortgagee afterwards prosecuted the mortgagor for an illegal sale of the mortgaged property, and thus recovered money he had been compelled to pay because of his liability on the bail-bond, in no way affected the right of another surety thereon to collect from the principal money which this latter surety had paid because of his liability on such bond, he being no party to the mortgage and having taken no part in the criminal prosecution.

6. Grounds of a motion for a new trial not certified cannot be considered. There was no material error, either of omission or commission, in stating the contentions of the respective parties,

nor in the other charges complained of; the court did not err in admitting nor in rejecting evidence; and there was sufficient evidence to warrant the verdict rendered, in so far as it found the property therein referred to subject to the plaintiff's execution, and also to warrant the finding as to the amounts due thereon; but inasmuch as there was no prayer in the petition authorizing any finding as to such amounts, direction is given that the verdict and judgment be amended so as to strike therefrom all which relates to this particular matter.

Argued January 11,—Decided February 22, 1897.

Equitable petition.   Before Judge Lumpkin.   Fulton superior court.   March term, 1896.

Buck filed an equitable petition against John L. Conley and his wife, and against Morris J. Conley and other relatives of John L., the purpose being to subject to plaintiff's claim against John L. (represented by an execution against John L. Conley as principal and Buck and others as sureties, which had been paid off by and transferred to Buck) certain property which John L. had conveyed to his wife and to Morris J.; the plaintiff contending that these conveyances were fraudulent and made for the purpose of hindering and defeating him in the enforcement of his claim, and in pursuance of a conspiracy of the defendants to hide the property and to defraud the plaintiff and other creditors of John L. The substance of the material allegations of the petition, as amended, and the grounds of demurrer thereto, will appear from the opinion of the court. In addition to the demurrer, defendants answered, denying the plaintiff's contentions; defendant John L. Conley further pleading that the execution held by plaintiff had been paid off, satisfied and extinguished. Upon the trial (a nonsuit having been granted as to Morris J. Conley) a verdict was rendered in favor of the plaintiff against John L. Conley and wife, finding certain sums of principal and interest to be due under the execution, and further finding the conveyance from John L. to his wife to be void, and the land to be subject. These two moved for a new trial, which was denied; and they excepted to this ruling and to the overruling of the demurrer.

*John L. Conley* and *Albert & Hughes,* for plaintiffs in error. *Arnold & Arnold,* contra.

Fish, Justice.

1. The plaintiffs in error complain because the court below overruled their demurrer to the petition as amended. That demurrer was: (1) no equity in the petition, plaintiff having an adequate and complete remedy at law; (2) multifariousness; (3) misjoinder of parties defendant; (4) because of insufficiency and indefiniteness in the allegations of fraud and collusion between the defendants named in the petition, in not setting out in what the fraud consisted, nor setting out any facts showing in what the fraud consisted. While substantially this same demurrer was made to the petition as it stood before the last amendment thereto, and was overruled by the court, as this last amendment struck therefrom all allegations concerning the Plowboy Company, which included everything with reference to Mrs. Sarah H. Conley and Benjamin Conley, Jr., and the demurrer was then renewed to the petition as amended, and again overruled, in treating of this case we think it is not necessary to consider it as it stood before this last amendment was allowed, but we take the case as it appeared after the allowance of this amendment. For if the plaintiff's petition as finally amended was good as against the demurrer, it can answer no practical purpose to now consider whether it could have withstood the demurrer in its previous shape. The object of the plaintiff's petition is to enable him to reach the property of the principal defendant John L. Conley, alleged to have been fraudulently transferred to the other defendants named in the petition, and to subject it to the execution held by the plaintiff against said Conley. In the language of Sutherland, J., in the case of Fellows *v.* Fellows, 4 Cowen, 699, a case very analogous to the case at bar, "the object is a legitimate one; and to the accomplishment of which a court of equity will readily lend its aid." It is undoubtedly true that where suit is filed in equity concerning several

things of distinct natures, against several persons, it is demurrable. *Marshall* v. *Means*, 12 *Ga.* 61; *Stephens* v. *Whitehead*, 75 *Ga.* 294; *Stuck* v. *Southern Steel Co.*, 96 *Ga.* 95; Story's Eq. Pl. §291. But according to the view that we take of the case under consideration, this is not such a suit. All discovery was expressly waived in the plaintiff's petition; and we are therefore, for the purpose of passing upon the demurrer to the petition as amended, to take the allegations of the petition to be true, notwithstanding the denials in the pleas of the defendants. So taking them, the case presented is one where a judgment debtor and certain of his near relatives "combined and conspired to aid him in hiding out his property from the plaintiff, and joined together to aid him in such purpose, and did so aid him," in various fraudulent transfers of different parcels of property, the same being all of the property owned by the said principal defendant, by separate deeds made by him to each of these codefendants respectively; "and all of the defendants entered into a general scheme to defraud the plaintiff and other creditors, . . and every fraudulent transfer described in the petition was in pursuance of such scheme," said debtor having (after such fraudulent transfers of his property) "no visible effects" and being "totally insolvent." Was the court right in overruling the demurrer on the ground that there was no equity in the petition, as the plaintiff had a complete remedy at law? In *DeLacy* v. *Hurst*, 83 *Ga.* 223, the demurrer was on the ground that " no equitable cause of action was set out in the plaintiffs' petition, because they did not show that they had reduced their debt to judgment and had execution issued thereon and said execution returned nulla bona." But in sustaining the judgment of the court below which overruled this demurrer, this court held, that "to a suit brought under the act of 1887, or put under it by amendment, a demurrer on the ground that complainants have a complete and adequate remedy at law is not sustainable." If such demurrer was not sustainable in

that case, surely it is not sustainable in the present one, be-
cause here the petitioning creditor has a judgment lien and
there has been a return of nulla bona upon the execution
issued thereon. The case of *DeLacy* v. *Hurst* was examined
and approved in *Regenstein* v. *Tyler*, 84 *Ga.* 277. In
*Stillwell* v. *Savannah Grocery Co.*, 88 *Ga.* 144, while it
was held that "the uniform procedure act of 1887 does not
make extraordinary remedies applicable or available where
they were not so before," the decision in *DeLacy* v. *Hurst*
was expressly adhered to; and Chief Justice Bleckley, deliv-
ering the opinion of the court, said, "That case holds that in
one and the same suit creditors may proceed for judgment
on their debts and to set aside fraudulent conveyances."
And he said that the creditors in the case which he had un-
der review were "recti in curia as to the ultimate purposes
of their action, these purposes being to establish their claim
against Peacock, Peterson & Co. and to set aside an alleged
fraudulent conveyance made by them to their codefendants,
Stillwell, Millen & Co." In *Vaughn* v. *Ga. Co-operative
Loan Co.*, decided by this court less than a year ago, and re-
ported in 98 *Ga.* 288, it was held that, "under the uniform
procedure act of 1887, both legal and equitable causes of
action can be joined, and relief of both kinds prayed for in
one suit;" and, following the decision in *DeLacy* v. *Hurst*,
it was held that the plaintiff in the case then before the court
could obtain a judgment at law against the principal defend-
ant on his note, foreclose the latter's equity of redemption
in the land conveyed by him as security for the debt, and,
if the sheriff's sale was fraudulent and void, could have that
sale set aside. In the case which we have under considera-
tion, the sole purpose of the plaintiff's petition is to have the
alleged fraudulent conveyances set aside and the property
covered by them decreed to be subject to a judgment which
he holds and upon which there has been a return of nulla
bona; and insolvency of the judgment debtor is expressly
charged. Certainly it would seem that if he could have

come into court by an equitable petition, both for the purpose of obtaining a judgment against Conley and also for the purpose of having the fraudulent conveyances set aside, he can, as the owner of a judgment against Conley and the fi. fa. issued thereon, upon which there has been a return of nulla bona, come into court in this way for the latter purpose only. We are therefore of opinion that there was no error in overruling the demurrer on this ground. This ruling will be further strengthened by what we shall say and what we shall cite in reference to the next two grounds of the demurrer, multifariousness and misjoinder of parties defendant, which we shall consider together. This court has repeatedly decided that multifariousness is an objection not favored by courts of equity. A leading case in this country, on these two subjects, which has been cited, approved and followed in numerous decisions by the courts of last resort in America, is that of Brinkerhoff *v.* Brown, 6 John. Ch. 139, where it was urged by way of demurrer that the bill was multifarious, first as to parties; second as to the objects of the bill. In that case the court decided that "a bill may be filed against several persons, relative to matters of the same nature, forming a connected series of acts, all intended to defraud and injure the plaintiffs, and in which all the defendants were more or less concerned, though not jointly in each act." And Chancellor Kent, after an able and elaborate review of the leading English authorities, said: "The principle to be deduced from these cases is, that a bill against several persons must relate to matters of the same nature and having a connection with each other, and in which all of the defendants are more or less concerned, though their rights in respect to the general subject of the case may be distinct." In Fellows *v.* Fellows, 4 Cowen, 682, decided by the Court of Errors of New York, in 1825, one of the defendants demurred to the bill, "because it was for several distinct matters and causes in many of which the defendant was not concerned;" but the court, following the

ruling in Brinkerhoff *v.* Brown, supra, held "that the defendants were properly joined, and that the demurrer should be overruled." And the court said, "This was held as well because there was one connected interest, centering in the point in issue, or one common point of litigation, as that the joinder tended to prevent multiplicity of suits." The court stated that "the general rule is, that where a bill is filed concerning things of distinct natures against several persons, it is demurrable; but unconnected parties may join in a suit, when there is one connected interest among them all, centering in the point in issue in the cause." In that case Woodworth, J., said, "the object is to reach the property of John Fellows, in the hands of the appellant and the other defendants. This property was fraudulently parcelled out and conveyed to three individuals. But for the fraudulent acts of the appellant and the other defendants, the respondents might have obtained the fruits of their decree against John Fellows. The claim against all is of the same nature. The fraud alleged against each one of the defendants is the same. The question to be decided is in every respect the same. The transfer being fraudulent, the property was not changed by being put into the hands of the defendants. The respondents seek the property of John Fellows, which the defendants hold without title. They are therefore all necessarily concerned in the thing to be recovered, although they set up distinct interests to separate parcels." In the same case Sutherland, J., said, "the respondents are judgment creditors of John Fellows, having their claim perfectly established by a decree in chancery, and not the subject of litigation in this suit. . . The general right claimed by the bill is a due application of the property of John Fellows to the payment of their judgment. . . The subject of the bill and of the relief, and the only matter in litigation, is the fraud charged in the management and disposition of that property; and in which charge all the defendants are implicated, though in different degrees and proportions. . . The

defendants therefore have one common interest among them all, centering in the point in issue in the cause, and distinct matters of different natures are not demanded by the bill. It is one matter; the property of John Fellows; and the point in issue, upon which the rights of all the parties must depend, is, whether the transfer of that property to his sons and son-in-law, who are his codefendants, was fraudulent or not." And he said, "If all the parties to a fraudulent transaction, like this, cannot be called to an account in one suit, it is in the power of dishonest debtors, by a distribution of their property, in minute portions, among their relations and friends, to defraud their creditors and set them at defiance with impunity. The expense and delay of separate suits would render their prosecution worse than useless, for all the purposes of indemnity and relief." In the same case, Savage, C. J., said, "There was, in the hands of John Fellows, certain property in the custody of the law, sequestered, if I may use the expression, and set apart to answer the demand of Ezra Fellows. This fact was perfectly known to all the defendants; and each of them, separately, as we are to intend (for they have denied the combination and conspiracy), conspired with John Fellows to defraud the respondents, by collusively taking separate parts of the property, and holding it for the benefit of John Fellows. There was no privity between William Fellows, Thomas Fellows and Roswell Day, but there was privity between each of them and John Fellows. If, then, we take the rule as laid down by counsel for the appellant, that 'there must be a common point of litigation, the decision of which affects the whole and will settle the rights of all,' still this case comes within it. The common point of litigation is the fraudulent transfer of the property by John Fellows to the other defendants." In the case of Donovan v. Dunning, reported in 69 Mo. 436, the petition alleged that William Dunning was, in November, 1873, indebted to various creditors whose names and the amounts alleged to be due to each were set

out in the petition; that he was insolvent, and that he at various times in 1873 and 1875, by separate conveyances, conveyed different parcels of realty belonging to him to different ones of his children, who were the other defendants in the suit, that all of the debts set out in the petition were put into judgment in January, 1875; that the deeds were without consideration and void as to creditors. Some of the defendants made default, and judgment was taken against them accordingly. Counsel representing the other defendants contended that the petition was "multifarious and defective in not alleging a conspiracy between the defendants to defraud the creditors of said William Dunning." The Supreme Court of Missouri, however, held that "When the plaintiff bases his claim to equitable relief against several defendants on one general right, the petition is not demurrable for multifariousness, although the defendants may have separate and distinct defences. This principle applied to a case where the plaintiff sought to have certain conveyances set aside as being in fraud of creditors." The case of Bobb v. Bobb, 76 Mo. 419, is also a case presenting similar features to the one now under consideration; for the bill, in the language of the court, alleged, "that from a time prior to the making of the several conveyances named in the bill, and subsequent to the time when the indebtedness for which a decree (in favor of the plaintiffs) was rendered began to accrue and become due, the defendant Charles Bobb had, in pursuance of a systematic plan to hinder, defraud and delay his creditors who subsequently obtained judgment for their claim, made to the several other defendants in this suit divers conveyances which are set out fully in the bill, together with a full description of the property, which conveyances are alleged in the bill to have been made without consideration, and with the sole purpose of removing the property affected by the several conveyances from the reach of his creditors on judgment and execution;" and, "as the bill affected several

pieces of property which had been, as was alleged, in pursuance of the same plan and design, deeded to different parties, it was objected to, on demurrer, on the ground of multifariousness." The court, however, following the ruling in Donovan v. Dunning, supra, decided that "a bill against several defendants to set aside several distinct conveyances made to them separately, on the ground of fraud—one general right being claimed—is not multifarious." In Howse v. Moody, 14 Fla. 59, the court in its opinion says: "It is apparent from the case stated that all of the defendants are not jointly and equally concerned in each distinct fraudulent act charged. There was a series of acts in this well conceived network of fraud, all terminating in the deception and injury of the plaintiff. The defendants performed different acts in the drama. These acts affected the property of the debtor—some the personal property, others the real estate. The object of the plaintiff in this complaint is to get the assistance of this court in unraveling this network of fraud in respect to each species of property, and to have a due application of the same to the payment of the claims of the creditors. The right of the plaintiff is against the whole property, and his right against all portions of it is of the same nature." Hamlin v. Wright, 23 Wis. 491, was an action brought by a receiver against a judgment debtor and several other parties, to set aside several deeds alleged to have been fraudulently made by the judgment debtor to these other defendants, so as to defeat the collection of the judgment. In that case the Supreme Court of Wisconsin decided (2d head-note to the case), that "all the fraudulent grantees may be united as defendants in such action, although they hold by separate conveyances, and each is charged only with fraud in his own purchase." Paine, J., delivering the opinion of the court, said: "The object of such a suit is to reach the property of the debtor; and the fact that all of the grantees have become accessory to the fraudulent attempt of the debtor to place his property be-

yond his creditors' reach, gives them such a common connection with the subject-matter of the suit that they may be joined, although the purchase of each was distinct from the others, and each is charged only with participating in the fraud in respect to his own purchase." In the case of North *v.* Bradway, 9 Minn. 183, the Supreme Court of Minnesota held, that "in an action by judgment creditors to remove impediments to their remedy created by the fraud of their debtor in conveying his property to several grantees, the debtor and his grantees may be joined in one action, although the grantees take by separate conveyances, and no joint fraud in one transaction is charged against them all." It will be observed from the cases cited above, that, according to the decisions of the Supreme Courts of Missouri, Wisconsin, Minnesota and Florida, such a suit as the one at bar is not demurrable for multifariousness, nor for misjoinder of parties even where no combination or conspiracy is alleged between all of the defendants, but that the fact that each one of the parties to whom the judgment debtor fraudulently transferred his property separately conspired with him to defraud his creditors was sufficient to sustain an action of this character; and Savage, C. J., in the case of Fellows *v.* Fellows, supra, takes substantially the same position. In the case which we have under review, the plaintiff, by an amendment to his petition, alleged that all of the defendants had combined together and had conspired to aid John L. Conley in hiding out his property from the plaintiff, and did so aid him, in every fraudulent transfer described in the petition; and that all the defendants had entered into a general scheme to defraud the plaintiff and his other creditors. In the case of Whaley *v.* Dawson, 2 Sch. & Lefr. 370, decided in 1805, Lord Redesdale said: "In the cases in England, where demurrers on the ground that the plaintiff demanded by his bill matters of distinct natures against several defendants not connected in interest, have been overruled, there has been a general right in the plaintiff cover-

ing the whole case, although the rights of the defendants may have been distinct." In the present case the subject-matter of the petition is the property of John L. Conley, alleged to have been fraudulently transferred, in separate parcels, to these other defendants; combination and conspiracy between all of the defendants to defeat his creditors is charged; the point in issue, upon which the rights of all parties must depend, is whether the transfer of that property to these codefendants was fraudulent or not. If, as alleged in the petition, Conley fraudulently transferred his property, for the purpose of defeating the plaintiff and his other creditors, to his wife and his brother, they having combined and conspired with him and each other for this purpose, although there were separate and distinct conveyances to each of these codefendants, the plaintiff has one general right, covering the whole case, against all of the defendants, and that right is to uncover the fraud of Conley, participated in by these other defendants, and to subject his property as a whole to the payment of his just debt. Having this general right against all of the defendants, who "have one common interest among them all, centering in the point in issue in the cause," he might, even before the passage of our uniform procedure act of 1887, have brought them all into a court of equity and had his rights, as against each and all of them, settled and determined in one suit; and certainly since the passage of that act, which makes the superior court, in the language of Chief Justice Bleckley in the case of *Manheim* v. *Claflin*, 81 *Ga.* 135, for most cases, "*a court of law and equity*," he can do so. While we have not been able to find among the decisions of this court any case which is as closely analogous, in its alleged facts, to the case at bar as, most of the cases above cited, the following Georgia cases, are on the same line, and strongly tend to sustain such a petition as this against a demurrer for multifariousness, or for misjoinder of parties. In *Worthy* v. *Johnson*, 8 *Ga.* 237, this court decided that "to sustain a bill against the

charge of multifariousness, it is not indispensable that all the parties should have an interest in all the matters contained in the suit. It is sufficient if each party has an interest in some matter in the suit, which is common to all, and they are connected with others." In *Blaisdell* v. *Bohr*, 68 *Ga.* 57, the second head-note is but a repetition of this ruling being almost in the same language. In this latter case, the plaintiff alleged, that twenty-three shares of railroad stock had been purloined or stolen from her, her name forged to a power of attorney on the back of the scrip, and that this stock, in separate parcels, at different times, had been sold to various parties, who were made defendants to the suit. Crawford, J., who delivered the opinion of the court, said: "There was in this whole transaction but a single subject-matter—the twenty-three shares of stock. How and where the liability will fall, and what shall be the final determination of the rights of these parties, are not the questions. All the parties are connected with it in the conveyance from the alleged true owner. They all may be heard and their rights and liabilities settled in one suit, and the whole matter finally adjudicated." In the present case, as we have said, there is but one subject-matter, the property of John L. Conley, and "all the parties are connected with it in the conveyance from the alleged true owner." In *Nail* v. *Mobley*, 9 *Ga.* 278, this court held that, "where a complainant in a bill claims one general right to property in the possession of two defendants, notwithstanding that right may be derived from distinct sources, a demurrer for multifariousness will be overruled." In that case Justice Warner says, "We do not perceive any difficulty or inconvenience which will arise in compelling the defendants, who are alleged to have [the plaintiff's] property in possession, from answering her allegations and accounting with her therefor. Courts of equity do not favor this objection of multifariousness, as this court has already announced, in *Warthen* v. *Brantley & Daniel*, 5 *Ga.* 573. We overruled a demurrer for multi-

fariousness in that case, and in *Butler* v. *Durham* (2 *Kelly* 413), and shall continue to do so, unless some practical inconvenience will manifestly be the result of maintaining the bill in court. It is the interest of parties, as well as the interest of the public, that all matters in controversy between them should be settled by one suit, when it can be done with safety and without great practical inconvenience." In *Lavender* v. *Thomas*, 18 *Ga.* 668, it was decided that, "a bill which seeks to have applied to the payment of the plaintiff's demand, exclusively, a fund in which all of the defendants have an interest, is not multifarious." In *Graham* v. *Dahlonega Gold Mining Co.*, 71 *Ga.* 296, it was held that "a bill to enjoin trespassers and to establish and quiet the right to the use of a stream appropriated by others, is not multifarious, or objectionable for misjoinder, because it is brought against all who have participated in the wrong or procured it to be done." And in that case the court said that the complainant claimed one general right against both of the respondents. In *City Bank of Macon* v. *Bartlett*, 71 *Ga.* 797, it was held that "where the plaintiffs have a common interest against all the defendants in a suit as to one or more questions raised by it, so as to make them all necessary parties for the purpose of enforcing that common interest, the circumstance of some of the defendants being subject to distinct liabilities in respect to different branches of the subject-matter, will not render the bill multifarious." In *Millbank* v. *Penniman*, 73 *Ga.* 136, it was decided that there was no misjoinder of parties, or causes of action, the defendants being joint wrong-doers, each of them contributing to the wrong complained of. According to the allegations in the petition in the present case, as amended, the defendants are joint wrong-doers, each contributing to the wrong complained of, because it is alleged that they have all entered into a conspiracy to defeat the collection of the plaintiff's debt, and that the common object of all the conspirators was to hide and cover up, in the names of the co-

conspirators other than the defendant in execution, property
which really belonged to him, and that in pursuance of this
object various deeds have been executed purporting to con-
vey specified parcels of this realty to these coconspirators, re-
spectively. In *Cohen* v. *Wolf & Buchwald*, 92 *Ga.* 207,
Justice Simmons, delivering the opinion of the court, says:
"In view of the charges that the firm of Wolf & Buchwald,
being insolvent, fraudulently procured for themselves a false
commercial rating, and upon the credit thus obtained bought
goods from various parties, never intending to pay for the
same; that this firm fraudulently mortgaged the goods so
purchased to the other defendants, who have conspired and
colluded with the firm in preparing and carrying out the
fraudulent scheme by which the goods were obtained, it can-
not be seriously contended that there was any misjoinder of
defendants. Each and all of the defendants were necessary
and proper parties to proceedings instituted for the purpose
of setting aside the frauds complained of." In that case it
was also held that, under its particular facts, there was no
difficulty in reaching the conclusion that, although the
fraudulent firm had dealt separately with the petitioners
and had purchased goods from them respectively in different
parcels, these petitioners had a common interest in setting
these fraudulent purchases aside. And the court, therefore,
held that there was no misjoinder of plaintiffs. In *Bowden*
v. *Achor*, 95 *Ga.* 243, it was decided that "an equitable
petition alleging that the plaintiff had been defrauded of
certain described lots of land, or the value thereof, by a
series of fraudulent and unconscionable acts perpetrated
upon her by various persons named as defendants, the peti-
tion setting forth in detail the history of these acts and
thereby showing that each and all of the defendants had
more or less connection with the same, and in effect charging
that the wrongs done her in the premises were the result of a
conspiracy among the defendants, in which they all to a
greater or less extent participated, and praying for appro-

priate relief as to each, was not demurrable for multifarious-
ness, or for misjoinder of parties, or for misjoinder of causes
of action." In *Ellis* v. *Pullman*, 95 *Ga.* 445, this court de-
cided that the "creditors of an insolvent mercantile corpora-
tion, the corporators of which, having full and absolute con-
trol of its affairs, have wrongfully misappropriated its assets
so as to put the same beyond the reach of creditors, may,
though the claims of each be separate and distinct from
those of all of the others, unite in an equitable petition for·
the purpose of subjecting these corporators to individual
liability because of such misappropriation, and, to this end,
of obtaining an accounting by them for the assets thus mis-
appropriated." In *Vaughn* v. *Ga. Co-operative Co.*, supra,
this court held, that "where a debtor and other persons enter
into a fraudulent scheme or conspiracy for the purpose of
defeating the collection of a debt due by the former, and
in pursuance of this conspiracy do a number of fraudulent
and unconscionable acts, the effect of which, if permitted
to stand, would be to destroy the creditor's lien upon the
property subject to the payment of this debt, the latter may,
by equitable petition against all the conspirators, setting
forth the facts and containing appropriate prayers, not only
obtain a money judgment or decree against the debtor, but
also have such other relief against the codefendants as the·
particular facts and circumstances of the case will justify."
And the court ruled that "a petition of this kind is not mul-
tifarious, nor demurrable for misjoinder of parties or for
misjoinder of causes of action." We are clearly of opinion
that the court below committed no error in holding that this
petition as amended was not demurrable for multifarious-
ness, or for misjoinder of parties defendant. We think that
the allegations of the petition were sufficient, as against a
demurrer on the ground of insufficiency and indefiniteness in
the allegations of fraud and collusion between the defend-
ants named in the petition, "in not setting out in what the·
fraud consisted, nor setting out any facts showing in what

the fraud consisted." It is charged that there was combina-
tion and conspiracy between all of the defendants to aid the
judgment debtor in hiding out his property, and to defraud
the plaintiff and his other creditors; that they entered into a
general scheme for this purpose, and that every fraudulent
transfer described in the petition was in pursuance of such
scheme. In support of these general allegations of fraud,
the details of the alleged fraudulent transfers are set out.
It is alleged that the conveyance from John L. Conley to
his wife was fraudulent and without consideration, and
made with the understanding between the grantor and the
grantee that the property should remain the property of the
grantor and should be hidden out under the name of his
wife; that he was insolvent and his wife knew it; that the
conveyance was made by him with intent to delay and de-
fraud his creditors and such intent was known to his wife;
that such conveyance was particularly made to defraud
Thornton and also the plaintiff, who was a surety on the
bond given by Conley in the suit brought against him by
Thornton, and that such intent was known to his wife. With
reference to the conveyances made by John L. Conley to
his brother Morris J. Conley, it is alleged that each of them
was without consideration; that one of them was executed
for the purpose of defrauding the plaintiff and John L. Con-
ley's other creditors, and that Morris J. knew of these facts;
that the understanding between the parties was that the
property was to remain the property of John L. and was to
be hidden out, under the name of Morris J., from John L.
Conley's creditors; that said deed was fraudulently dated
back over five years, and that it was fraudulently withheld
from the record until March 28th, 1890, the deed being
dated Aug. 27th, 1884. It was charged that the other deed
was falsely dated July 12th, 1883, and recorded March 31st,
1890; that it was fraudulent and made for the purpose of
hindering, delaying and defrauding the creditors of John L.
Conley, and that such intention was known to Morris J.

Conley, and that said deed was fraudulently withheld from the record several years. We think that these allegations, taken together, sufficiently set out "in what the fraud consisted" and the "facts showing in what the fraud consisted."

2. It is alleged that the court erred, when charging the jury in reference to the deed made by Conley to his wife, in instructing them as follows: "If this transfer was made to delay or defraud creditors, including Thornton and the sureties on the trover bond, and such intention was known to Mrs. Conley, the conveyance to her would be void, even though it may appear that she has paid a valuable consideration. In other words, if she bought the fi. fa. and it was still in life, and she took a transfer of it to herself, but with the intention and for the purpose of delaying and defrauding such creditors Mr. Conley transferred the land to her, the conveyance would be void as against such creditors, although it may have been based upon a valuable consideration." This is alleged to be error, 1st, because (as it is alleged) Mrs. Conley was a creditor of her husband and paid full value for the land; 2d, because, if Mrs. Conley took the land and paid value for it, she obtained title as against any one who might have been a creditor of her husband, and it would make no difference whether she took it to prevent other crditors from getting it or not; 3d, because there is no evidence that John L. Conley then owed anybody except his wife. Did the evidence in the case authorize the court to charge upon this subject? There certainly was evidence to show that at the time that Conley made the deed to his wife he owed Thornton a considerable sum. The plaintiff introduced the declaration in the trover suit of Thornton against John L. Conley, which showed that it was filed June 19th, 1883, and he also introduced three different verdicts which had been rendered in this suit, for different amounts, in favor of the plaintiff, the last verdict being for $5,714.62, also the judgment of the court, following this last verdict, in favor of Thornton against Conley, for this amount. These

.documents taken together are sufficient to show that Conley was indebted to Thornton at the date of the suit of the latter against him, which was before Conley executed the deed to his wife. Did the court charge the law correctly? Section 2695 of the Civil Code declares that certain acts by .debtors "shall be fraudulent in law as against creditors, and as to them null and void," and among them is "every conveyance of real or personal estate, by writing or otherwise, . . had or made with intention to delay or defraud creditors, and such intention known to the party taking; a bona fide transaction on a valuable consideration, and without notice or grounds for reasonable suspicion, shall be valid." "Every conveyance of real or personal estate, by writing ·or otherwise, had or made with intention to delay or defraud creditors, and such intention known to the party taking," is declared to be void. There is no exception here in favor of a party taking such a conveyance based upon a valuable ·consideration, who takes with knowledge of the fraudulent intent. But the kind of a transaction, based upon a valuable consideration, which is declared to be valid is "a bona fide transaction on a valuable consideration, *and without notice ·or grounds for reasonable suspicion.*" Section 3529 of the Civil Code says that, "Every sale made with intent to defraud either creditors of the vendor, or prior or subsequent purchasers, if such intention be known to the vendee, shall be absolutely void as against such creditors or purchasers." Here, again, there is no exception in favor of such a sale simply because it may be upon a valuable consideration. In the case of Cadogan *v.* Kennett, Cowp. Rep. 432, cited by Chief Justice Lumpkin in *Clayton* v. *Brown,* 17 *Ga.* 221, Lord Mansfield said, "The statute 13 Eliz. c. 5, which relates to frauds against creditors, directs, 'that no act whatever, done to defraud a creditor or creditors, shall be of any effect against such creditor or creditors.' But then such a construction is not to be made in support of creditors, as will make third persons sufferers. Therefore, the statute does not mili-

tate against any transaction bona fide and where there is no imagination of fraud. And so is the common law. But if the transaction be not bona fide, the circumstance of its being done for a *valuable consideration* will not alone take it out of the statute. I have known several cases where persons have given a fair and full price for goods, and where the possession was actually changed; yet, being done for the purpose of defeating creditors, the transaction has been held fraudulent, and therefore void." "An absolute deed made with intent to delay or defraud creditors, though made also to secure a debt, is void as against creditors if the grantee takes it with notice of the fraudulent intention." *Palmour* v. *Johnson*, 84 *Ga.* 91. "A fraudulent conveyance cannot stand against creditors, whether made to secure a debt or not. The conveyance must be pure—it must be bona fide, and with no purpose known to or suspected by the creditor to hamper and entangle the property as against other creditors for the sake of hindering or delaying them. If made partly to secure a debt, and partly to hinder, delay or in any way defraud other creditors, and the creditor taking the deed has knowledge of this latter intention or grounds for reasonable suspicion, no title will pass as against the other creditors." *Phinizy* v. *Clark*, 62 *Ga.* 626, 627. The evidence in the case authorized the charge of the court complained of in this exception, and the plaintiffs in error have no legal reason to complain of the statement of the law therein contained.

3. That numerous instructions given by the court to the jury may not have been precisely and in every respect adjusted to the facts in evidence is not cause for a new trial, when it appears that these instructions were in themselves correct propositions of law, and that they contained nothing which could have misled the jury, or in any way tended to prevent their reaching a correct conclusion upon the real issues involved. After the court granted a nonsuit as to Morris J. Conley, the real, substantial issue left in the case was, whether or not the deed made by John L. Conley to

his wife was made for the purpose of delaying and defrauding his creditors, and, if it was, whether this intention was known to his wife. The court submitted this issue to the jury fairly, fully and clearly; and we do not think that the jury could have been misled by anything else in the court's charge. For instance, the court charged the jury, that "where husband and wife are living together on land, if nothing further appears, the presumption of law is that the possession is that of the husband; but if it be shown that the title to the land is in the wife, if she is living on the land, and that her husband is living with her, then such possession would in law be that of the wife and not of the husband, unless this was overcome by showing actual dominion and possession on the part of the husband." This is alleged to be error, because the evidence showed that the husband and wife lived together on a lot of land that was unconnected with the particular lot in dispute. This part of the charge is a correct statement of the law; and while the evidence in the case may not have authorized it, we do not see how the plaintiffs in error, or either of them, were hurt by it. If, as counsel for the plaintiffs in error contend, the evidence clearly showed that neither the husband nor the wife lived on the lot in dispute, we can not readily see how the jury could have been misled by this part of the court's instructions. Though irrelevant, it was harmless.

4. It is alleged that the court erred in admitting in evidence, over the defendants' objection, the fi. fa. and the judgment upon which it was founded, the ground of the objection being that the judgment was then dormant. The judgment was rendered on the 16th of December, 1887, and the fi. fa. thereon was issued April 25th, 1888. The equitable petition of.the plaintiff was filed September 23d, 1894.. It is therefore clear that the judgment was not dormant when.the plaintiff's petition was filed. As this equitable petition was brought for the express purpose of enforcing the collection of the amount due on this judgment, the filing.

of this petition was of itself sufficient to prevent the running of the dormancy statute against it, so long as the petition was pending. In the language of Chief Justice Lumpkin, in the case of *Ector* v. *Ector*, 25 *Ga.* 274, "is not the publicity of this transaction quite equal to a return of nulla bona, or a receipt of $5.00 upon the execution by the sheriff or constable? Does it not demonstrate in point of fact, that the creditor is actively endeavoring to collect his money?" This ruling is abundantly sustained by the decisions of this court in cases where this dormancy question has been raised. See the opinion of the court in *Gholston* v. *O'Kelley*, 81 *Ga.* 21, where these cases are collated and cited.

5. It is alleged that the court erred in refusing to admit in evidence the record of the accusation, conviction and sentence of John L. Conley. In connection with the offer of this record in evidence, the defendants in the court below, who are the plaintiffs in error here, stated that they intended to prove that the fine shown by the record to have been imposed upon Conley had been paid; that the plaintiff knew of the commencement of said prosecution, was a witness for the State upon the trial of said Conley upon said accusation; that when said fine was paid the plaintiff was informed of the fact by Conley's counsel, and was advised to take steps to collect his part of the fine; that the plaintiff did demand an amount of the fine sufficient to cover his claim against Conley, which was set out in the accusation; and that the plaintiff, being refused any part of said fine by the person to whom he applied, made no further effort to collect the same. A copy of this record from the city court of Atlanta is attached to the motion for a new trial. It appears from this copy of the record, that Conley, on the accusation of one Maher, was prosecuted and convicted, under section 4600 of the Code of 1882, for the wrongful sale of mortgaged property, and that he was fined a sum which was exactly double the amount which Maher, in the accusation, alleged that he himself had paid by reason of his liability as one of the sure-

ties on the bond given by Conley in the trover suit which had been instituted against him by M. E. Thornton. Plaintiffs in error contend, that the mortgage was given to indemnify Maher, Buck and others against loss in consequence of their having become the sureties of Conley on this trover bond; that when Conley was convicted for the wrongful sale of the mortgaged property, he was fined in double the amount of the debt secured by the mortgage; that Buck was one of the mortgagees, and the payment of this fine extinguished all liability of Conley to him. As set forth in this copy of the record from the city court of Atlanta, the mortgage is "between John L. Conley of the first part and Michael Maher of the second part"; and stipulates that "if the said party of the first part shall save harmless the said party of the second part by reason of said suretyship, then this bill of sale is to become void; but if a judgment shall be had in said case against the party of the first part, then the said party of the second part shall be at liberty to seize and take possession of said property for the benefit and security of himself and cosecurities on said bond, and deliver the same into court, and for that purpose the party of the first part will hold said property as the agent of the said party of the second part until the final hearing of said suit in trover." Buck was no party to this mortgage. No matter what his loss might have been, by reason of his being a surety on the trover bond, he could not have foreclosed the mortgage, nor could Maher have foreclosed the mortgage in Buck's interest; he could only have foreclosed it for the amount of his own loss. The mortgage in express terms was given to save Maher harmless, and if he had been saved harmless the mortgage would have been at an end. The stipulation that, if a judgment should be had in the trover suit, Maher should be at liberty to seize the property for the benefit of himself and cosureties and deliver the same into court, created no lien upon the property in favor of the cosureties which could be foreclosed in favor of Buck or any one else, and it was no

part of the mortgage. It simply conferred, by contract, a power upon Maher, which, in a certain contingency, he was at liberty to exercise for the benefit of himself and cosureties. If the contingency occurred and he failed to exercise the power thus conferred, Buck, being no party to the contract, could not have exercised this power himself, and it is very doubtful if he could have compelled Maher to exercise it in his behalf. Section 4600 of the Code of 1882, under which Conley was prosecuted and convicted, makes the wrongful sale of mortgaged property a misdemeanor, and provides a penalty therefor. It says, "if any person shall violate the provisions of this section and loss thereby is sustained by *the holder* of the mortgage, the offender shall be deemed guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine in double the sum, or debt, which said mortgage was given to secure," etc. Buck was in no sense *the holder* of this mortgage; for it neither gave him a lien in his own name upon the property covered by it, nor did it give Maher any lien upon the property for Buck's benefit, which he could foreclose in Buck's behalf. The "*sum, or debt*" which this instrument *as a mortgage* was given to secure, was not the amount which might be recovered against Conley and his bondsmen in the pending trover suit, but it was whatever amount Maher, as surety on the trover bond, should ultimately have to pay. Maher being *the holder, and the only holder*, of the mortgage, when Conley was prosecuted under this section of the code, he could only have been legally convicted upon proof of loss sustained by Maher. Proof of loss sustained by Buck, who was not the holder of the mortgage, would have been immaterial and irrelevant. Section 4601 of the Code of 1882 provides, that one half of the fine when collected shall be paid to *the holder* of the mortgage, and the payment shall extinguish the debt to secure which the mortgage was executed, and the remaining half shall be paid to the treasury of the county in which the conviction is had. It is apparent,

from the provisions of this section, that Buck could not have legally collected any part of this fine, for only the holder of the mortgage could do so. As he could not have legally collected any part of the fine imposed upon Conley, and as, by the admissions of the defendants in their pleadings, he did not receive any part of it, it is clear that the payment of this fine by Conley did not extinguish the debt which he held against Conley by reason of the amount which he was compelled to pay as surety upon the trover bond. Buck was no party to the prosecution of Conley, and the mere fact that Maher who brought the accusation, in addition to setting forth therein the amount which he had paid as surety on the trover bond, also set out the amount which Buck as another of such sureties had paid, and alleged that Conley had sold the property "with intent to defraud [the] mortgagees," and without first obtaining their consent, does not change this view of the case. The court therefore did right to exclude this proffered evidence, as it was irrelevant and immaterial.

6. Some of the alleged grounds for a new trial are not certified by the trial judge; such grounds cannot be considered by this court. There was no material error, either of omission or commission, in stating the contentions of the respective parties, nor in the other charges complained of. The court did not err in admitting nor in rejecting evidence; and there was sufficient evidence to warrant the verdict rendered in so far as it found the property therein referred to subject to the plaintiff's execution, and also to warrant the finding as to the amounts due thereon; but inasmuch as there was no prayer in the petition authorizing any finding as to such amounts, direction is given that the verdict and judgment be amended so as to strike therefrom all which relates to this particular matter.

*Judgment affirmed, with direction. All the Justices concurring.*